# ROBERT W. HYMAN

## *v.*

## WILLIAM BAYNE.

1. **LIMITATIONS** — *statutes prior to* 1872 *apply to non-residents.* The statutes of limitation in force in this State prior to 1872, when both parties have, at all times, resided continuously out of this State for the statutory period, bar a recovery. The provision that the time any defendant is absent from this State shall not be counted, and allowing suit after his return, does not apply to non-residents who have never been in the State.

2. **SAME**—*actions barred in other States.* The twentieth section of the Limitation Law of 1872 bars a recovery upon causes of action arising in another State or foreign country, when, by the laws thereof, an action can not be maintained by lapse of time, and applies to causes of action barred by the laws of such other State or country at the time the act was passed. By it, suits are barred in our courts, if they are barred by the laws of another State, when the action is brought in this State, without reference to when suit is brought, so that it is after the adoption of the statute.

3. **SAME**—*constitutionality of statutes.* A statute barring a recovery upon a cause of action already barred by the laws of the State where it arose and the parties reside, or declaring that no suit should be maintained after its passage on a new promise to pay a debt barred, unless the new promise is in writing and signed by the debtor, or unless a new consideration was paid for the promise, is not contrary to public policy or any constitutional provision.

4. **SAME**—*rule as to construing as prospective.* Where a retrospective law operates harshly, the courts, presuming that the legislature intended no injustice, where the language is doubtful, will give it a prospective operation; but if the language is clear and unmistakable, the courts will never hesitate to enforce it. But there is no hardship in barring an action already barred by the laws of a State where the parties reside and the cause of action arose.

5. **SAME**—*repealing section construed.* The saving clause in the 24th section of the Limitation Act of 1872 has reference to the statutes therein repealed, and continues them in force as to all prior causes of action not already barred, until the expiration of the time when the bar would be completed, and has no application to section 20, which is an entirely new provision.

6. **PLEA** *of limitations, need not negative exceptions.* A plea that the cause of action is barred by the Statute of Limitations of another State where it accrued and the parties resided, need not aver that the defendant continued to remain in such State until the bar was completed. If, by the laws of such

State, absence from the State arrests the running of the statute, that fact must be replied.

7. PLEADING—*exceptions in statute.* Where a statute is set up and relied on for a recovery or in defense, the party pleading need not refer to or negative exceptions or a proviso, unless it is contained in the enacting clause, but it must be set up by the other party.

8. STATUTES OF OTHER STATES—*must be pleaded and proved.* Courts can not take notice of foreign statutes, or presume they contain any saving clause, but they must be brought to the notice of the court by the pleadings.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. AYER & KALES, for the appellant.

Messrs. COOPER, GARNETT & PACKARD, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee instituted an action of assumpsit against appellant, in the Superior Court of Cook county, for money paid, laid out and expended for appellant's use. He filed several special pleas. The fourth set up and relied on the Statute of Limitations, averring that more than sixteen years had elapsed since the causes of action had accrued. To this plea appellee replied, Hyman was not within the State of Illinois for the space of sixteen years altogether, since the causes of action accrued and before the suit was brought. To this replication defendant rejoined, that the causes of action accrued beyond the limits of the State subsequent to the 10th day of April, 1849, and that when they accrued and the contracts were entered into, and since that time till the commencement of this suit, both plaintiff and defendant had not been nor were they then residents of this State, and the period of sixteen years from the time these causes of action accrued had expired before suit was brought. To this rejoinder plaintiff filed a demurrer, and it was sustained by the court, and defendant abided by his rejoinder.

The same question was substantially presented on a demurrer

to plaintiff's first and second replications to defendant's ninth plea.

The seventh plea averred, as a defense, that the several causes of action arose and accrued in the State of Maryland, on the 1st day of January, 1856; that the defendant was then a citizen and resident thereof, and that neither plaintiff nor defendant had hitherto been or are they now citizens or residents of this State; that by the laws of that State, then and ever since in force, all actions on the causes of action set forth in plaintiff's declaration, are and were wholly barred, precluded and estopped at the end of three years after the causes of action accrued, and that no action had been brought thereon in the courts of Maryland or elsewhere, within three years after the causes of action accrued, although three years after the same had accrued has long since elapsed before the commencement of this suit, wherefore no action could be maintained by the laws of the State of Maryland, by reason of the lapse of time. To this plea the court sustained a general demurrer.

The eighth plea is in substance the same as the seventh plea, setting up a residence by defendant in the State of New York, and the bar of the causes of action by the laws of that State, averring that defendant had remained therein for the full period required by the statute of that State to produce a bar, and in this it differed from the seventh plea. To this plea a demurrer was overruled, and a replication was interposed that the causes of action did not arise or accrue in the State of New York, and on this replication issue was taken to the country.

The principal questions arise and are to be determined on these pleadings.

The question is, whether, under our limitation laws in force prior to the act of 1872, when both parties have, at all times, resided continuously beyond the limits of this State for the statutory period, a bar to a recovery is created.

It is urged in support of the proposition, that this action is barred by the act of the 5th of November, 1849. Its first section provides, " that all actions founded upon any promis-

sory note, simple contract in writing, bond, judgment, or other evidence of indebtedness in writing, made, caused or entered into after the passage of this act, shall be commenced within sixteen years after the cause of action accrued, and not thereafter." The second section provides, that " all actions founded upon accounts, bills of exchange or orders, or upon promises not in writing, express or implied, made after the passage of this act, shall be commenced within five years next after the cause of action shall have accrued, and not thereafter." The third section provides, that the act, and the several acts to which it is an amendment, shall be subject to the several provisions, conditions and restrictions of the twelfth and thirteenth sections of the chapter entitled "Limitations," of the Revised Statutes of 1845 of this State.

The twelfth section of that chapter can have no bearing on this case. The thirteenth provides, that "if any person or persons against whom there is or shall be a cause of action, as is specified in the preceding sections of this chapter, except real or possessory actions, shall be out of this State at the time of the cause of such action accruing, or any time during which a suit might be sustained on such cause of action, then the person or persons who shall be entitled to such action shall be at liberty to bring the same against such person or persons after his, her or their return to the State, and the time of such person's absence shall not be accounted as part of the time limited by this chapter."

The twentieth section of the act of the 4th of April, 1872, provides, that " when a cause of action has arisen in a State or territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon can not be maintained by reason of lapse of time, an action shall not be maintained in this State."

It is contended, that, under these provisions, appellee's claim is as effectually barred as had the parties been residents of this State. It is urged that a person can not return to the State unless he had previously been in the State, and hence the saving clause of the act of 1845 has no application where the

statutory period has expired, and the debtor has never been within the State, and that when the debtor resides out of the State, and the creditor is a non-resident, that statute creates a bar to the action. This is the language of the statute. A person can not return to a place until he has previously been at that place. This proposition is self-evident. It can not be rendered plainer by illustration or by reasoning.

This, then, being the plain and unmistakable import of the language, shall the courts give it effect, or by forced and unnatural interpretation shall they say that it does not convey the legislative intention? Shall the courts import into it an exception or a further clause, and say it should have read and was intended to read that the exception should also include persons who had never been in the State? It would seem to be unauthorized to give such a construction to this provision, when its language does not seem to admit of construction, nor does its spirit, nor does public policy seem to admit of it. The policy which dictated the adoption of such statutes, seems to require an interpretation in harmony with the plain language of the section. These statutes are designed to give repose to society, and are intended to prevent litigation of stale claims; and in pursuance of such a policy, it does not seem to be warranted on the part of the courts to obstruct or thwart such policy by doubtful or unauthorized construction. If the General Assembly had intended to exclude from the operation of this provision cases like the present, it seems reasonable to suppose that they would have added after the words, "shall be out of this State," "or shall reside out of this State at the time of such action accruing, or any time during which a suit might be sustained on such cause of action," etc., and might maintain the action "after his, her or their return to," or he, she or they shall come within "this state," etc.

We should have entertained no doubt that appellee's claim was not embraced within the provisions of this section, and his action was thereby barred, had it not been for the decisions of so large a number of respectable courts holding otherwise, under similar provisions in their statutes. But there is a con-

flict in the decisions of the courts of the States of the Union, and we feel at liberty to determine according to what we think was the meaning of the legislature, expressed by the language of the section. The courts holding that such cause of action is not included in such a saving clause, seem to us to have adopted the true construction, and supported it by the sounder reason, and hence we are inclined to adopt it as a basis of decision.

When trade was confined within narrow limits, and credit was not so general or as extensive as at the present day, the benefits and necessity of such a statute were not so fully felt or appreciated as at the present time. This is manifested by legislation of the present day designed to obviate the effects of the narrow construction placed on this very provision by the courts, which hold that an action is not barred against a non-resident, although it may be barred in the State in which the parties reside. This has been done in several States, including our own. The courts, under the then state of trade and credit, looked upon limitation laws with disfavor, and were inclined to extend their provisions no farther than they were compelled by the full and unmistakable letter of the statute. But the unprecedented change of trade, and its necessities, have wrought many changes in business, and this necessity, with others.

We now come to consider the seventh plea, which sets up and relies on the 20th section of the limitation law, as revised and adopted on the 4th of April, 1872, and is now embodied in our present revision. It is insisted that the General Assembly did not intend that this provision should operate upon past transactions, or causes of action already barred by the laws of such other State, territory or foreign country, but that it should only apply to causes of action that should become barred after the passage of the statute. The language unmistakably applies to causes of action on which a suit could not be maintained at the time the law was passed. It says, a cause of action which has arisen, and not a cause of action which may arise, and may be barred by the lapse of time. The natural

and grammatical import of the language is, that it shall be barred in our courts, if it is barred by the laws of another State, when the action is brought in this State, without reference to when the suit shall be brought, so that it is after the adoption of the law.

This, we think, is the natural import of the language employed. In fact, it would be difficult to give it any other reasonable meaning. But it is said that this and other courts have held that a retrospective construction will not be given to a statute, unless the language shall so clearly and unmistakably require it that there is no escape from it, and this is not the case with this section.

If this act could be said to be retrospective, there can be no misunderstanding of this language as requiring it; and looking to the motive and policy which dictated its adoption, we do not see that it is harsh, or that it can be said to work injustice or oppression, so as to require its operation to be restricted by construction. It takes from the creditor no fixed or vested right. All the right he previously had was the bare contingency that his debtor might, by possibility, come into this State, and that he might learn of the fact in time to sue him, and obtain service before he should leave. He could not, according to the plea, which is admitted by the demurrer to be true, have maintained an action in Maryland at any time within thirteen years or more before this suit was brought. Under the laws of that State, he had no cause of action, nor had he any here, until the debtor should come into this State. A suit here would have been no more availing than in Maryland, without service or appearance by the defendant. Appellee's right of action was gone there, and he could have none here until appellant came within the jurisdiction of our courts. It is wholly unlike a case where the debtor resides in this State, and the creditor is domiciled abroad, and the claim has not been barred by the statute. In that case it would be unjust for the legislature to close the doors of our courts, without giving a reasonable time in which to sue, because then there

would be a valid subsisting cause of action, with a right to recover without any impediment.

But, in the case at bar, the claim was dormant, and could only be revived by a new promise, or accidentally finding the defendant, and obtaining service on him where he would be permitted to sue, and the debtor not allowed to interpose the statute as a bar.

Suppose the General Assembly of this State were to enact that no suit should be maintained, after its passage, on a new promise to pay a debt barred by the Statute of Limitations, unless such new promise was in writing, and signed by the debtor. Would any one say the law was unjust, or that it deprived the creditor of any right? In such a case, all the right which the creditor has is the mere contingent expectation to get a new promise upon which he could sue and recover. Nor do we see that an act of the legislature prohibiting a suit from being maintained on a claim once barred, unless there should be a new consideration paid, would be violative of public policy, unconstitutional, unjust or oppressive. In such a case, until the new promise is made, the creditor has no right to sue, whatever may be his moral claim. Nor does this construction of the 20th section of the Limitation Law of 1872 in any sense impair the obligation of the contract. That was effectually gone by operation of the Limitation Law of Maryland, and when the remedy is gone by which to enforce the contract, its obligation is gone, although the contract may remain without any obligatory force.

It is true that, when a retrospective law operates harshly, the courts, presuming that the legislature never intend to act with injustice, will not, where the language is doubtful, give a construction that will work wrong, but will give it a more benign operation. But when the language is clear and unmistakable, the courts never hesitate to enforce the law as they find it. But even if this language could be held to be doubtful, what hardship or injustice can be sustained by holding that a non-resident of the State can not maintain an action on a stale demand barred by the laws of another State, as the

language of the statute has provided. In what respect is his claim more valid, or more just, than the claim of one of our citizens, which has become barred? We are entirely unable to see or understand. If they are both just, and they are both barred, the legal obligation is gone, and why revive it in favor of one and not the other? No reason is perceived in natural justice or in sound public policy. If the wellbeing of society requires that one such claim should be barred, the same reason applies with full force to require the bar of the other. They both depend upon the same natural reason and the same necessities of public policy.

It is impossible, then, to say that, to hold that such a demand is barred, is unreasonable and unjust. Then why warp the statute to permit its enforcement? We must, therefore, hold that this statute is not retrospective in the sense or to the extent that it is obnoxious to criticism, or to require that it should have a construction to only include debts or causes of action which might arise after its adoption. Nor does it, as we have seen, impair the obligation of the contract, as it had no obligatory force. That was gone when the act was adopted. Hence we must hold that this plea showed a sufficient bar to prevent a recovery, if proved.

It is, however, claimed that the plea was bad, because it failed to aver that appellant remained in Maryland until the bar was completed. But, according to approved precedents, that was unnecessary. It is a well recognized rule of pleading, that, where a statute is set up and relied on for a recovery or as a defense, the party pleading need not refer to or negative an exception or a proviso, unless it is contained in the enacting clause. When not found in the enacting clause, it must be set up by the other party, and he must show that his claim is not affected by the exception. Hence it is believed that all approved precedents of pleas of the Statute of Limitations have no averment that the case is not within the saving clause of the statute. If the exception exists, it usually is found in the replication to the plea, and it is thus shown that

the statute has not barred the claim for which the suit is brought.

By demurring to the plea, appellee admits that the statute of Maryland is as set out or averred in the plea, and the court can not take notice of a foreign statute, or presume that it contains any saving clause; that must be brought to the notice of the court by the pleadings, if such an exception exists. This rule is familiar to the entire profession, and requires the citation of no authorities for its support or illustration. We must, therefore, hold that this plea presented a good bar to the action, and that the court below erred in sustaining the demurrer to it, and should have required appellant to reply.

But it is urged that the case of *Dickson* v. *The Chicago, Burlington and Quincy Railroad Co.* 77 Ill. 331, holds that the 24th section of the act of 1872 saves this action from the operation of that statute. We fail to perceive that such could have been the legislative intention. It, no doubt, was intended to save all causes of action that had not become barred, until the expiration of the time when the bar would be completed.

The saving in the repealing clause had reference to the repeal of the statutes there named as being repealed. But section 20 was an entirely new provision, then for the first time enacted. Had this section been enacted as an independent law, or had it been embodied in some other chapter, in the same terms we find it in the limitation law, it could not be contended that there was or could be any saving to embrace this and like actions. We can not suppose the legislature intended to extend the full period of limitations to foreign claims already barred. If they had intended more than the three months intervening between the time of its passage and its going into effect, they would, no doubt, have fixed a time specifically.

We can not suppose the General Assembly, who were impressed with the necessity of cutting off claims already barred in other States, would have allowed suits to be brought on them within the period of from five to sixteen years, owing to the nature of the claim. But where the statute had not run,

they justly and properly preserved the right to sue until the time under the old law was spent. This was the decision in the case of *Dickson* v. *The Chicago, Burlington and Quincy Railroad Co. supra,* and what was there said was correct, as applied to that and like cases, and so far as it applied to the repeal of former statutes.

The last clause of the 24th section is this: "But this section shall not be construed so as to affect any rights or liabilities, or any causes of action that may have accrued before this act shall take effect."

It is obvious that, when this statute took effect, appellee had no right of action existing anywhere, nor was there any legal liability resting on appellant; nor was there any existing cause of action that had accrued before the act took effect. Hence this saving clause is entirely consistent with the 20th section. The repeal of the former laws, or existing rights under them, was not affected by the 20th section, as appellee had no existing legal right under any of those prior laws. His was a bare contingency that had not ripened into a right, and hence the repeal of the statute took nothing from him, nor did it deprive him of any right. It may have cut off a mere uncertain expectation, but nothing more.

Had there been a cause of action in existence, then appellee's claim would have been saved, as was the claim in *Dickson's case.* To hold that this claim was saved, would be to revive a claim barred by the statute of another State; and if the legislature had intended to revive such claims, why not claims of the same character in favor of our citizens, as well as those of other persons? We might, with equal propriety, hold that claims barred by our statute could be enforced during the statutory period of limitation, because actions had once accrued before that act took effect, as to hold that appellee had, more than thirteen years before he sued, an action to accrue, which was before the statute became operative. We are unable to view this statute in any light so that it can be said that appellee's claim was not barred.

What has already been said, renders it unnecessary to discuss questions raised as to the sufficiency of defendant's eighth plea, and the proof under it.

For the errors indicated, the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*