THE MERCHANTS NATIONAL BANK OF BISMARCK, N. D. *vs.* WM. BRAITHWAITE, *et al.*

Opinion filed May 12th, 1898.

**State District Court Successor of Territorial District Court.**

On the admission of North Dakota into the federal union, the State District Court became the successor of the Territorial District Court as to all actions no longer pending, and the judgments of such Territorial District Court passed under the jurisdiction of the State District Court. Such State District Court has power to issue executions thereon, and the judges thereof have authority to institute supplementary proceedings based upon such judgment, as in the case of a judgment rendered in the State District Court.

**Execution Upon Judgment—Limitation.**

A judgment ceases to be valid after the expiration of 10 years from the recovery thereof, unless suit is brought thereon within 10 years, and in even that case the judgment is dead for all purposes except that of supporting such action.

**Supplementary Proceedings Fall When Judgment Barred.**

Thereafter supplementary proceedings, though instituted while the judgment was alive, fall to the ground, and the defendant may move to have them set aside on the ground that the judgment has ceased to be valid. Such proceedings are not an action on the judgment, but are in the nature of a creditors' suit to enforce the collection thereof. Hence their pendency is no more effectual to keep alive the judgment than such a suit or an execution would be.

**Shortening Statute of Limitations.**

The legislature may lessen the statutory period within which actions must be brought even as to existing causes of action, provided the suitor has a reasonable time in which to sue after the statute making the change is passed.

**Computation of Time Under Statute Shortening Limitation.**

When the statute is not to go into effect until a day subsequent to that on which it is passed, the reasonable time is computed from the day of its passage and not from the day on which it becomes effective.

**Statute Need Not Fix Limit as to Existing Causes of Action.**

It is not necessary to the validity of a law which lessens the time in which an action may be brought that it should as to existing causes of action fix a particular period after the enactment of the law within which, in any event, such causes of action may be enforced.

**Court Will Determine What is a Reasonable Time.**

In the absence of such a provision, the court will determine in each case whether, after the new law took effect, the suitor still had a reasonable time under such new law in which to commence his action.

Appeal from District Court, Burleigh County; *Winchester*, J.

The plaintiff on the 15th day of April, 1886, recovered a judgment in the District Court of Burleigh County, Dakota Territory, against the defendants John A. McLean, and William Braithwaite for the sum of $973.35. The judgment was based upon a note on which Braithwaite was surety for McLean. Execution issued April 17th, 1890 and was returned wholly unsatisfied May 25th, 1891. On the 10th day of January, 1894, the Judge of the District Court made an order for the examination of Braithwaite in supplementary proceedings, and restraining him from disposing of any property. After disclosure made and on January 16th, 1895, an order was made appointing a receiver of Braithwaite's property. On the first day of February, 1896, the Judge of the District Court made an order discharging the receiver and cancelling his bond, and continuing the restraining order against Braithwaite. On the 3rd day of February, 1896, the court of its own motion made an order to show cause why a receiver should not be appointed in place of the one discharged, to which Braithwaite made answer on the 21st day of February, 1896. Nothing further was done in the matter until April 1st, 1897, when Braithwaite obtained an order to show cause why said proceedings should not be dismissed, because as he averred the Judge of the District Court of Burleigh County, State of North Dakota, before whom the supplementary proceedings were instituted is not and never was the judge of the court in which the judgment was recovered, nor is he the successor of said judge. That since the institution of the supplementary proceedings, the judgment and all rights to enforce the same by action or otherwise have become barred by the statute of limitations. On May 17th, 1897, the order to show cause was discharged and defendants motion to dismiss the proceeding denied; A certificate of deposit placed in the hands of the clerk prior thereto upon direction of the court as a condition to the vacation of the the restraining order, was ordered endorsed and delivered to plaintiff in satisfaction of its judgment. Defendant Braithwaite appealed. Reversed.

*Newton & Patterson*, for appellant.

The jurisdiction and procedure in supplementary proceedings are entirely a creation of the statute. *Clark* v. *Bengenthal*, 8 N. W. Rep. 865. The proceedings are commenced by an order from the judge of the court. Section 5174, Compiled Laws, section 5562, Revised Codes. The "judge of the court" clearly indicates the judge of the court where the judgment was rendered. *Second Ward Bank* v. *Upmann*, 12 Wis. 555; *Miller* v. *Rossman,* 15 How. Pr. 10; *Biting* v. *Vanderberg*, 17 How. Pr. 80. It is not a proceeding in court. *Biting* v. *Venderberg*, 17 How. Pr. 80; 2 Freeman Executions, § 397. The court in which the judgment in question was rendered viz: the Territorial District Court ceased to do business and went out of existence in November, 1889, two years after the rendition of this judgment. In the nature of things there could be no judge of a court that did not exist when the proceedings were commenced. By the provision of the constitution, section 85, all judicial power and jurisdiction in matters of judicial cognizance is vested exclusively in the courts and section 5174, Comp. Laws, in so far as it confers jurisdiction upon the judge of the court is repealed or abrogated. This provision of statute is embraced within the implied exception of section 2 of the schedule, and was not continued in force as a law of the state. *Spencer Creek Water Co.* v. *Vallejo*, 48 Cal. 70; *Risser* v. *Hoyt*, 18 N. W. Rep. 611. All causes pending in the territorial courts were transferred to the Federal or State Courts. Enab. Act. § 23; § § 567, 568, and 704, Rev. St. U. S. The judgment in question was not a cause pending at statehood. All records and papers of the territorial courts were subject to disposition by the United States. *Benner* v. *Porter*, 9 How. 235; 13 L. Ed. 119–124. Even if it should be held that the record of this judgment passed into the jurisdiction and possession of the State District Court, because of section 6 of the schedule,—it did not become a judgment or record of the state court. *Hunt* v. *Palao*, 4 How. 589; 11 L. Ed. 1115; *Benner* v. *Porter*, 9 How. 235. The statute of limitations when this judgment was rendered was twenty years.

Sections 37, 52, and 53, Code Civ. Pro. 1878. By the Revised Codes which took effect January 1st, 1896, the right to commence an action upon a judgment is limited to ten years. Sections 5199, 5200, Revised Codes. This code was approved by the governor March 2nd, 1895, ten months before the code went into effect and thirteenth and one-half months before the time limited therein, as a bar had elapsed since the rendition of the judgment. The limitation of subdivision 1, section 5200, Revised Codes, embraces domestic judgments. *Mason* v. *Cronise*, 20 Cal. 212. Statutes of limitation relate to the remedy, and the remedy is governed by the *lex fori*. *McClung* v. *Silliman*, 3 Pet. 270, 7 L. Ed. 676; *Bank* v. *Donnelly*, 8 Peters, 361; 8 L. Ed. 974; *McElmoyle* v. *Cohen*, 13 Pet. 312; 10 L. Ed. 177; *Townsend* v. *Jemison*, 13 L. Ed. 194; *Bigelow* v. *Bigelow*, 12 Metc. 268; *Lincoln* v. *Battelle*, 6 Wend. 475; 3 Am. and Eng. Enc. L. 583. The question of the period of limitation is one of policy or expediency on the part of the legislature. *Falconer* v. *Dorman*, 7 Wis. 338; *Horbach* v. *Miller*, 4 Neb. 31; *O'Brien* v. *Gaslin*, 30 N. W. Rep. 274; *Hawkins* v. *Barney*, 5 Pet. 457. This is true of causes of action already accrued, provided a reasonable time is allowed. *Howell* v. *Howell*, 15 Wis. 60; *Koshkonong* v. *Burton*, 14 Otto, 668; *Bigelow* v. *Bemis*, 2 Allen 496; *Dale* v. *Frisby*, 59 Ind. 520; *Mitchell* v. *Clark*, 110 U. S. 633; *Terry* v. *Anderson*, 5 Otto, 628 *Holcombe* v. *Tracy*, 2 Minn. 201; *Smith* v. *Packard*, 12 Wis. 412; *Hyman* v. *Boyne*, 83 Ill. 256; *Barron* v. *Wayne*, 37 Mich. 287; *Sampson* v. *Sampson*, 63 Me. 328; *Dyer* v. *Gill*, 32 Ark. 410; *Gullotel* v. *Mayor*, 55 How. Pr. 114; *Parker* v. *Kane*, 4 Wis. 1; *Von Baumbach* v. *Bade*, 9 Wis. 510; *Eaton* v. *Supervisors*, 40 Wis. 668; *Baker* v. *Supervisors*, 39 Wis. 444. In determining what is a reasonable time, account must be taken of the time between the passage of the limitation statute and the date of its taking effect. *Holcombe* v. *Tracy*, 2 Minn. 201; *Stine* v. *Bennett*, 13 Minn. 138; *Hayward* v. *Judd*, 4 Minn. 483; *Smith* v. *Morrison*, 22 Pick. 430; *Hedger* v. *Rennaker*, 3 Metc. (Ky.) 258; *Burwell* v. *Tullis*, 12 Minn. 578. This act took effect thirty days after the governors proclamation.

*In re Henricks*, 5 N. D. 114. The ten year limitation did not expire until four and one-half months after the governors proclamation. This was a reasonable time. *Auld* v. *Butcher*, 2 Kan. 135; *State* v. *Jones*, 21 Md. 432; *Stevens* v. *St. Louis*, 43 Mo. 385; *Adamson* v. *Davis*, 47 Mo. 286; *Kenyon* v. *Stewart*, 44 Pa. St. 179; *Koon* v. *Brown*, 64 Pa. St. 55; *O'Bannon* v. *Louisville*, 8 Bush. 348; *Lockhart* v. *Yuser*, 2 Bush. 231; *Smith* v. *Morrison*, 22 Pick. 430; *Bigelow* v. *Bemis*, 2 Allan, 496. Supplementary proceedings after execution returned are entirely ancillary. *Barker* v. *Dayton*, 28 Wis. 367; *Bank* v. *Spencer*, 15 How. Pr. 415; *Dresser* v. *Van Pelt*, 15 How. Pr. 19. The remedy by execution though not named in the statute falls within the statutory bar to a remedy by action. *Barron* v. *Wayne*, 37 Mich. 287; *White* v. *Moore*, 38 S. W. Rep. 505; *Peters* v. *Vawter*, 10 Mont. 201. The same is true in regard to supplementary proceedings. *Newell* v. *Dart*, 9 N. W. Rep. 732; *Dole* v. *Wilson*, 40 N. W. Rep. 161; *Young* v. *Bemer*, 4 Barb. 442; *Jerome* v. *Williams*, 13 Mich. 521; *P. & C. R. Co.* v. *Byers*, 32 Pa. St. 22; *Milber* v. *Bartlett*, 106 Mo. 381; *Isaac* v. *Swift*, 10 Cal. 71. The order appointing receiver not having been recorded as required was abortive. Section 5599, Rev. Codes; *Dubois* v. *Cassidy*, 75 N. Y. 298; *Manning* v. *Evens*, 19 Hun. 500; *Wing* v. *Disse*, 15 Hun. 190; *Hayes* v. *Buckley*, 53 How. Pr. 173–187. The order of court directing the payment of the certificate of deposit to plaintiff was without authority of law. *Pattee* v. *Low*, 16 How. Pr. 549; *Christenson* v. *Tostevin*, 53 N. W. Rep. 461.

*Boucher & Philbrick*, (*Cochrane & Feetham*, of counsel,) for respondent.

Statutes limiting the time within which proceedings may be commenced cannot affect proceedings already begun. *Driggs* v. *Williams*, 15 Abb. Pr. 477; *Ludeman* v. *Hirth*, 55 N. W. Rep. 449; *Palen* v. *Bushnell*, 4 N. Y. Supp. 63. A supplementary proceeding is not an action upon a judgment within the meaning of the statute limiting to ten years, the time within which an action upon a judgment may be commenced. Section 5200, Rev. Codes,

*Rose* v. *Henry*, 37 Hun. 397; *Kincaid* v. *Richardson*, 25 Hun. 237; 9 Abb. New Cases, 315; *Bolt* v. *Hauser*, 10 N. Y. Supp. 397; *Green* v. *Hauser*, 9 N. Y. Supp. 622; *Palen* v. *Bushnell*, 4 N. Y. Supp. 63; *Wintermire* v. *Westover*, 14 N. Y. 16; *Miller* v. *Rossman*, 15 How. Pr. 10; *Owen* v. *Dubignac*; 9 Abb. Pr. 184; *Bolt* v. *Hauser*, 11 N. Y. Supp. 366; 57 Hun. 567; *Johnson* v. *Ry. Co.*, 54 N. Y. 416; *Herder* v. *Collier*, 6 N. Y. Supp. 513; *Campbell* v. *Ebben*, 2 N. Y. 615; *Woodward* v. *Hall*, 75 Wis. 406, 44 N. W. Rep. 114.

CORLISS, C. J.   This appeal is from two orders.   One is an order denying defendant's motion to set aside certain orders in proceedings supplementary to execution, and granting to the plaintiff certain relief, not necessary to be now specified.   The other order required defendant to deposit in court a sum of money as a condition of vacating a restraining order issued in such proceedings.  The sweeping assertion is made by counsel for defendant that the proceedings and all orders therein are void for want of jurisdiction in the judge by whose order such proceedings were instituted and by whom the different orders therein have been made.   The judgment on which such proceedings were based was recovered in the District Court of the Territory of Dakota in 1886, three years before statehood.   The statute authorizing supplementary proceedings, which was then in force, was section 5174 of the Compiled Laws.   This section declared that the order to examine the judgment debtor might be issued by the Judge of the District Court, and that all subsequent orders must be made by the same judge.   The language of the statute is that the judge of the court having power to issue execution on the judgment, and out of which the execution was in fact issued, shall possess the power to make the order for the examination of the debtor and all subsequent orders.   It is obvious that, as these proceedings are purely statutory in character, no other judge has any jurisdiction in the matter, because no other judge is named in the statute.   It is urged that as the judgment is a judgment of a territorial court, and as that court has ceased to exist, no state court has any power to issue process to enforce such judgment

by execution. Hence it is insisted that the execution, which was in fact issued by the state court in 1890, is void, and that the proceedings based thereon must necessarily fall to the ground for want of foundation. Moreover, it is claimed that, as the state court was not the court which could issue execution on the judgment, the judge thereof is not the judge who is authorized by § 5174, Comp. Laws, (which was continued in force by the state constitution,) to grant the order made in this case to examine the judgment debtor in supplementary proceedings. We cannot agree with counsel for plaintiff in this contention. The question is one of jurisdiction after statehood over the records and judgments obtained in actions brought in a territorial court. The jurisdiction which formerly was vested in the territorial court over such records and judgments, congress must have intended to be transferred to some other tribunal. We cannot believe that it was the purpose of that body to take from a great mass of judgments in the various courts of the different territories mentioned in the enabling act all force save that of a conclusive adjudication, and compel the plaintiffs therein to go through the formality of bringing suit upon them in the courts of the different states to be admitted into the Union, the same as upon a foreign judgment or the judgment of a sister state. The old courts having jurisdiction over cases in which judgments had been ordered were to be swept away. New courts were to take their place possessing similar jurisdiction. Those judgments were judgments rendered within the same territory to be embraced within the new states. Why, under such circumstances, congress should withhold its consent that the judgments should become the judgments of the state courts which should succeed to the same general jurisdiction as that of the territorial tribunals in which such judgments were rendered is inexplicable. That it did not withhold such consent is clear; and, even if we were in doubt on the point, our duty would be plain. It has been settled by an authority to which we must defer. In *Glaspell* v. *Railroad Co.*, 144 U. S. 211, 12 Sup. Ct. 593, the Federal Supreme Court held

that as to an action not pending at the time of the admission of North Dakota into the Union, but in which a judgment had been rendered in the Territorial District Court, there was no jurisdiction whatever in the Federal Court, but that exclusive jurisdiction of such a case was vested in the State District Court, which was the successor of such territorial court.   The case was remanded to the State District Court, the Federal Supreme Court holding that jurisdiction over the judgment in that action rendered by the Territorial District Court had been by the enabling act transferred to the state court.   The action in which the judgment was rendered on which are founded the supplementary proceedings, the validity of which are controverted, was not a pending action, within the meaning either of our statute or of the enabling act. The time to appeal therefrom had expired when the state was admitted, and, even if it had not yet expired, still the suit was not pending, because no proceedings looking to a new trial were then pending, nor has any step to review the judgment on appeal ever been taken in the case.   In construing the enabling act, the court in the Glaspell case said that that act had transferred pending cases in which the United States was a party to the Federal Court, and pending cases over which a Federal Court would have no jurisdiction to the state courts, and that the jurisdiction over all cases which were no longer pending, and over the records and judgments therein, was vested in the state courts, without reference to the question whether such cases must have been brought in a state or a Federal Court, had the territory been a state at the time such actions were commenced.   The enabling act, by its express provisions and the implications thereof, divided all actions, so far as the jurisdiction thereof was concerned, into two great classes,—those which were pending and those which were not pending at the time of statehood.   It declared that as to pending actions jurisdiction over all actions to which the United States was a party should vest absolutely in the new Federal Courts created in such new states; that as to all suits over which the Federal Courts would have had no jurisdiction had the

territory been a state at the time they were brought, the jurisdic-
tion thereof should pass to the proper state courts; and that with
regard to the middle class of cases, *i. e.* those in which the state
and Federal Courts would have had concurrent jurisdiction had
the territory then been a state, either of the parties to the pro-
ceedings might determine whether he would continue the litiga-
tion in the state or in the Federal Court. Until the necessary steps
should be taken to transfer such cases, the enabling act contem-
plated that the proper court for them to be carried on in was the
state court, and not the Federal Court. It was only after an
application for a transfer had been made that the state court was
to lose jurisdiction. Until then the jurisdiction over the case was
lodged in the state, and not in the Federal Court; and, unless the
application for such transfer should be made in time, the juris-
diction of the state court over the case would become absolute.
Section 23, Enabling Act; *State* v. *Barnes*, 5 N. D. 350, 65 N. W. Rep.
688. Congress declared that, with respect to all pending actions
save those belonging to a single class, the jurisdiction thereover
should vest in the state courts temporarily at least, and with
regard to some of them permanently; and that, even in those
cases in which it was in the power of either party to divest the
state court of jurisdiction, the state court should retain jurisdic-
tion if neither party should make a timely application for that
purpose. As to actions which were no longer pending, there was
no reason for providing that jurisdiction over such cases should
be transferred to the federal courts, whether with or without the
application of either of the parties. In such cases the merits
would no longer remain open to investigation, and therefore there
would be no reason for taking jurisdiction of those cases away
from the state courts. No prejudicial, hostile state action could
be apprehended. What was more natural and reasonable than to
vest jurisdiction over such cases in the state courts? Considering
the provisions of the enabling act, in connection with the failure
of congress to vest jurisdiction over territorial judgments in the
Federal Courts, and the fact that congress in passing that act must

have contemplated that the state constitution would create state courts having jurisdiction similar to that possessed by the territorial courts, and that these would be the courts better fitted to enforce judgments throughout the different counties in the state, we must infer an implied assent by congress that jurisdiction over cases not pending should vest in state courts exclusively.   Otherwise we must assume that those cases were to be left without any court possessing jurisdiction over them for any purpose whatever, for it is clear that no jurisdiction over them is vested by the enabling act in the Federal Courts.   Said the court in *Glaspell* v. *Railroad Co.*, 144 U. S. 211, 12 Sup. Ct. 596: "The record of cases of exclusive federal jurisdiction which have gone to judgment should, indeed, be transmitted to the circuit court, and the judgments there enforced; but, where final judgment has been rendered in cases of concurrent jurisdiction, no reason can be assigned for, nor do the terms of the act of congress contemplate such a transfer."   If it be said that the assent of the people of the state was requisite to vest jurisdiction in the state courts over cases which had ceased to be pending at the time the state was admitted because they had theretofore terminated in judgment, we find this assent in the constitution.   Section 6 of the schedule provides: "Whenever the Judge of the District Court of any district elected under the provisions of this constitution shall have qualified in his office, the several causes then pending in the District Court of the territory within any county in such district, and the records, papers and proceedings of said District Court, and the seal and other property pertaining thereto, shall pass into the jurisdiction and possession of the District Court of the state for such county, except as provided in the enabling act of congress."   This section transferred all records, papers, and proceedings of the Territorial District Court to the jurisdiction of the State District Court, without reference to the question whether the case was or was not pending.   By this section the people, speaking through their fundamental law, have, with the assent of congress, vested jurisdiction over judgments of the Territorial District Courts, in

the proper State District Court, and the judgments were thereafter as much judgments of the State District Court as though they had been rendered by such courts. That is the court which must issue execution upon such judgment, and therefore it is the court which must furnish the judge who is authorized to make all orders in supplementary proceedings based thereon. The opinion of the Federal Supreme Court in *Benner* v. *Porter*, 9 How. 235, appears to us to support our ruling on this point: "We have said that the assent of congress was essential to the authorized transfer of the records of the territorial courts, in suits pending at the time of the change of government, to the custody of state tribunals. It is proper to add, to avoid misconstruction, that we do not mean thereby to imply or express any opinion of the question whether or not, without such assent, the state judicatures would acquire jurisdiction. That is altogether a different question. And, besides, the acts of congress that have been passed, in several instances, on the admission of a state, providing for the transfer of the federal causes to the District Court, as in the case of the admission of Florida, already referred to, and saying nothing at the time in respect to those belonging to state authority, may very well imply an assent to the tranfer of them by the state to the appropriate tribunal. Even the omission on the part of congress to interfere at all in the matter may be subject to a like implication."

We see no force in the contention of counsel for defendant that under the constitution a judge no longer has power to perform any judicial act, but that the same must be performed by the court, and that, therefore, a judge cannot make an order in supplementary proceedings. It is entirely competent for the legislature, under our constitution, to authorize a judge to exercise judicial functions when not sitting as a court, and territorial laws of this character, such as section 5174, Comp. Laws, were not affected thereby. In Minnesota, as in this state, the judicial power is vested in the courts named, and not in judges. (Const. Minn. Art. 6, section 1;) and yet section 5486 of the General

Statutes of 1894 authorizes the District Judge to make orders in supplementary proceedings, and his power to do so has never been questioned in that state.

It is insisted that the proceedings are all irregular because the execution issued upon the judgment was not returned within the statutory time. But there is nothing in the statute which makes it indispensable that this should be done to sustain these proceedings. All that is required is that the execution shall be issued and returned unsatisfied. This was done. Moreover, it was rather late, after submitting to examination and after the appointment of a receiver without moving to dismiss on this ground, to raise the point for the first time on a motion to dismiss all the proceedings and set aside all the orders made therein. *Baker* v. *Herkimer*, 43 Hun. 86; *Ammidon* v. *Walcott*, 15 Abb. Prac. 314.

It appears to be urged as one of the reasons why defendant's motion should have been granted that his examination disclosed legal assets upon which execution could be levied. This might furnish a sufficient reason why a District Judge should, in his discretion, refuse to appoint a receiver or withhold the appointment of one until such legal assets had been exhausted. But, even in such a case, we could not disturb an order appointing a receiver. The discretion is one with the exercise of which we would not interfere. Receivers in such proceedings are appointed even when no property is found on the examination. The receiver may be able to discover some. There is nothing to show that these alleged legal assets are sufficient to pay the plaintiff's judgment. Moreover, the order appointing the receiver was not appealed from, and the point cannot be raised on an appeal from an order refusing to dismiss the proceedings and all orders thereunder. The proper time to present reasons why a receiver should not be appointed is when the application for his appointment is made. If the objection to such appointment is overruled, the defendant must review the decision by an appeal from the order appointing the receiver. If he suffers the time to appeal from such order to pass, he cannot thereafter raise the point.

After the receiver had been appointed, he applied to the court for a discharge on the ground that he was about to leave the state, and desired to be relieved from the further discharge of the duties of the receivership. His application was granted, but in the same order the restraining order was continued, and subsequently an order to show cause why another receiver should not be appointed to fill the vacancy was issued by the District Judge. What disposition has ever been made of this motion does not appear. The motion appears to be still pending. Defendant then moved that the proceedings be dismissed, and also that the restraining order be vacated. The motion to dismiss was denied. The motion to vacate the restraining order was granted on condition. The order is in the following words: "Ordered, that the said restraining order heretofore existing and now in force in such matter be, and the same is hereby, dissolved upon condition, and when the said William Braithwaite shall deposit the sum of nineteen hundred and twenty-five dollars with the Bismarck Bank, of Bismarck, at 5 per cent. interest per annum, upon certificate of special deposit, and payable to Walter Skelton, clerk of this court, upon the order of the court, after a final determination of this proceeding, or as may be finally determined in this proceeding, in whatever court it may be finally decided, and that said certificate be deposited immediately with the clerk of this court, and to be disposed of as hereinbefore stated; and that the plaintiff give a good and sufficient undertaking, with sureties to be approved by the court, in the sum of five hundred dollars, conditioned that the plaintiff will pay the said William Braithwaite, in case he prevails, his costs and disbursements of this proceeding, and all loss of interest upon the amount of said special deposit, not exceeding the legal rate of seven per cent. per annum, less the rate collected on said special deposit; and that the said undertaking and a copy thereof served upon the said Braithwaite's attorneys, and the original filed with the clerk of this court, on or before the end of fifteen days from the date hereof, or said sum so deposited to be immediately returned to

said William Braithwaite and released from this order." When the motion to dismiss the proceedings was denied the order then entered contained the following directions: "Ordered, that the certificate of deposit heretofore placed in the hands of the clerk of this court for the sum of $1,925 be indorsed and delivered by said clerk to the plaintiff herein in accordance with the order heretofore made in this proceeding, and dated the 3d day of April, 1897, which said order is hereby referred to and made a part hereof; and that the money represented by and so received by the plaintiff upon said certificate be applied upon the judgment in this action and the costs and disbursements incurred in said supplementary proceedings."

It is urged that the motion to dismiss the proceedings should have been granted, and that, therefore, the order denying defendant's motion to dismiss should be reversed. This claim of defendant is based on the postulate that the judgment at the time the motion was made had ceased to have any vitality. More than 10 years had at that time elapsed since its recovery. It is true that at the time the judgment was rendered the law permitted an action thereon to be brought within twenty years from the date of its rendition. Comp. Laws, sections 4848, 4849. But on January 1, 1896, when the Revised Codes went into effect, the limitation period was reduced to 10 years. Rev. Codes, sections 5199, 5200. The judgment having been recovered April 15, 1886, the plaintiff then still had after January 1, 1896 (3½ months,) in which to commence an action thereon, and secure a new judgment, which would be good for another period of 10 years. It is claimed by counsel for defendant that the plaintiff had a reasonable time in which to sue, under the new limitation law, and that, therefore, it will not impair the obligation of any contract right of the plaintiff to hold that the new statute, which in terms embraces past as well as future judgments, controls its rights. It is well settled that the time in which to commence an action may be lessened as to existing causes of action, provided the suitor has still a reasonable time after the new law is passed in

which to commence his suit. *Howell* v. *Howell*, 15 Wis. 60; *Koshkonong* v. *Burton*, 104 U. S. 668, and cases cited; *Bigelow* v. *Bemis*, 2 Allen, 496; *Dale* v. *Frisbie*, 59 Ind. 530; *Mitchell* v. *Clark*, 110 U. S. 633, 4 Sup. Ct. 170, 312; *Terry* v. *Anderson*, 95 U. S. 628; *Holcombe* v. *Tracy*, 2 Minn. 241, (Gil. 201;) *Smith* v. *Packard*, 12 Wis. 412; *Hyman* v. *Bayne*, 83 Ill. 256; *Parsons* v. *Wayne, Circuit Judge*, 37 Mich. 287; *Sampson* v. *Sampson*, 63 Me. 328; *Dyer* v. *Gill*, 32 Ark. 410; *Parker* v. *Kane*, 4 Wis. 1, and Vilas & Bryant's notes; *Von Baumbach* v. *Bade*, 9 Wis. 559; *Eaton* v. *Supervisors*, 40 Wis. 668; *Baker* v. *Supervisors*, 39 Wis. 444; *Guillotel* v. *Mayor, etc.*, 55 How. Prac. 114.

That 3½ months is a reasonable time might perhaps admit of doubt. On that point we express no opinion. But it is evident that plaintiff was notified as early as March 2, 1895, when the Revised Codes were approved by the governor, that as soon as the new limitation statute went into effect its time would be cut down to 10 years. From March 2, 1895, to January 1, 1896, the plaintiff received daily notice that after the new codes went into operation it could no longer wait 20 years to sue upon the judgment. That the reasonable time is to be computed from the day when the new law is passed, and not from the time when it takes effect, is well settled. *State* v. *Jones*, 21 Md. 432; *Smith* v. *Morrison*, 22 Pick. 430; *Stine* v. *Bennett*, 13 Minn. 153, (Gil. 138;) *Hedger* v. *Rennaker*, 3 Metc. (Ky.) 258; *Bigelow* v. *Bemis*, 2 Allen, 496. Counting from the day when the 10 year statute was approved by the governor, the plaintiff had over 13 months in which to bring an action upon his judgment. This was a reasonable time, under all the authorities. *Holcombe* v. *Tracy*, 2 Minn. 241, (Gil. 201;) *Stine* v. *Bennett*, 13 Minn. 153, (Gil. 138;) *Smith* v. *Packard*, 12 Wis. 412; *Bigelow* v. *Bemis*, 2 Allen, 496; *Korn* v. *Browne*, 64 Pa. St. 55; *State* v. *Jones*, 21 Md. 432.

While it is usual for the new limitation law which cuts down the period within which certain actions may be brought to provide in terms that all suitors whose causes of action had accrued before the change was made should have, in any event, a specified

time in which to sue, yet we do not think that this provision is essential to the validity of such a statutory change, when applied to existing causes of action, provided the time actually left in which to sue is not unreasonable. In the following cases no fixed period was given by the new law in which subsisting rights of action might be enforced, but all cases were brought within the provisions of the statute as fully as if it had existed when the existing causes of action arose, and yet in none of these decisions do we find any intimation that for this reason the law was unconstitutional as to causes of action which had already accrued, the plaintiff having in each of these cases a reasonable time to sue as a matter of fact: *Bigelow* v. *Bemis*, 2 Allen, 496; *State* v. *Jones*, 21 Md. 432; *Burke* v. *Association*, 40 Minn. 506, 42 N. W. Rep. 479. If in the particular case the time is not reasonable, the court must either declare that the statute does not embrace such a case, or that with respect thereto it is unconstitutional because it impairs the obligation of a contract.

The question then, for decision, is whether, under the Revised Codes, a judgment is, after 10 years, so utterly extinguished by the statute that proceedings to enforce the same fall to the ground, though instituted while the judgment was still alive. No action on a judgment can be brought after 10 years. Revised Codes, §§ 5199, 5200. No execution thereon can be issued after 10 years. Section 5500. At the expiration of that period it ceases to be a lien on real estate. Section 5490. It is true that the statute declares that supplementary proceedings may be instituted thereon at any time after execution is returned unsatisfied. Section 5562. But this section was not passed for the purpose of giving the judgment creditor an unlimited period beyond 10 years in which to enforce a judgment which could not be enforced by execution, which was no longer a lien on real property, and on which no action would lie. This section fixes the time when the right to institute such proceedings accrues, but it does not attempt to regulate the question of limitation at all. That question is left to other provisions of the code. If, as we

think, the other sections of the code clearly show the legislative purpose to destroy the judgment after 10 years, then it was unnecessary to prescribe in terms any period after which supplementary proceedings could not be instituted or carried on. Such proceedings are analogous to proceedings under an execution. They are a statutory substitute for the old mode of reaching equitable assets by a creditor's bill. 3 Rum. Prac. 398, 399. They are not an action on the judgment. See *Newell* v. *Dart*, 28 Minn. 248, 9 N. W. Rep. 732. They are prosecuted for the same purpose for which an execution is employed, *i. e.* as a means of enforcing a valid subsisting judgment. When once it is ascertained that for any reason there is no longer any judgment, the proceedings to enforce it must fall to the ground. It is immaterial whether the judgment has been paid or has ceased to possess life owing to the lapse of time. In either case, there is no longer any judgment left to support the steps taken to enforce it. A strange condition of the law would it be if, after the lien of the judgment on real estate had been lost, and after the plaintiff was powerless to enforce it by execution, and despite the fact that he could no longer give it new life by a suit upon it resulting in the recovery of a new judgment, he could nevertheless, through a receiver in supplementary proceedings, reach and sell the debtor's lands, and subject all his assets, legal and equitable, to the payment of the very same outlawed judgment. We were at first much influenced in our views by certain decisions in the State of New York. Without attempting to analyze them, we cite them, that it may be seen whether the ground on which we distinguish them from the case at bar is sound: *Townsend* v. *Tolhurst*, (Sup.) 10 N. Y. Supp. 378; *Bolt* v. *Hauser*, (Erie Co. Ct.) 10 N. Y. Supp. 397; *Rose* v. *Henry*, 37 Hun. 397; *Waltermire* v. *Westover*, 14 N. Y. 16; *Herder* v. *Collyer*, (Com. Pl.) 6 N. Y. Supp. 513; *Kincaid* v. *Richardson*, 25 Hun. 237; *Bolt* v. *Hauser*, (Sup.) 11 N. Y. Supp. 366. It is apparent that in New York the statute was leveled at only a particular remedy, and therefore the courts rightly held that all other remedies remained unimpaired. But our statutes, when con-

strued together, clearly evince a legislative purpose to wipe out a judgment after 10 years, unless suit thereon is brought within that period, and, even in that event, to keep it alive solely as the foundation for such suit, and not for general purposes.   See *Ross* v. *Duval*, 13 Pet. 45, where Mr. Justice McLean says: "It cannot be supposed that the legislature would bar an action on the judgment, and still authorize an execution on it."   The judgment was therefore extinguished at the time defendant made his motion to set aside the supplementary proceedings.   The fact that such proceedings had been commenced in time, upon a perfectly valid judgment is no answer to the motion to set them aside after the judgment had ceased to be valid.   *Newell* v. *Dart*, 28 Minn. 248, 9 N. W. Rep. 732; *McAleer* v. *Clay Co.*, 42 Fed. Rep. 665.   In the case first cited a creditors' suit had been brought on a valid judgment, but during its pendency the judgment became outlawed.   The court held that the action must be dismissed, saying:   "Hence, before the final trial and decision of this case, and before judgment rendered therein, plaintiff's judgment had ceased to exist either as a cause of action or a lien, unless kept alive by the commencement and pendency of this action beyond the statutory period of ten years.   We do not think the pendency of this action had any such effect.   It is not in any proper sense, as before remarked, an action brought upon the judgment as a cause of action, in order to obtain a new judgment, but simply an action ancillary to, and for the purpose of obtaining satisfaction of, an existing judgment.   *   *   *   We fail to see any distinction in principle between a case where, for the purpose of enforcing his judgment, a party resorts to execution to reach property liable to such process, and a case where, for the same purpose, he proceeds by creditors' bill or supplementary proceedings to reach assets not subject to execution.   In both cases the object is the same,—to reach property of the debtor in order to satisfy an existing judgment,—and there is no more reason why a creditors' bill or supplementary proceeding (which is a statutory substitute for the former) should continue

the life of a judgment beyond the statutory period in the one case than that a levy under an execution should do so in the other. We are therefore of opinion that plaintiff's judgment became barred and ceased to exist, either as a cause of action or as a lien, during the pendency of this action." That it was proper to raise the question by motion is evident, for in no other way could it be raised under the circumstances, the proceedings being originally valid, and having become assailable only after all other modes of attacking them were gone. *Leo* v. *Joseph*, (Sup.) 9 N. Y. Supp. 612; *Smith* v. *Paul*, 20 How. Prac. 97; *World Co.* v. *Brooks*, 7 Abb. Prac. (N. S.) 212.

For the reasons stated the motion of defendant to set aside the supplementary proceedings should have been granted. It follows that the order denying that motion must be reversed. The District Court will enter an order granting such motion. The defendant will be entitled to have a provision inserted in such order directing the return to him of the certificate of deposit mentioned in the order vacating the restraining order. All concur.