NEWELL COMPANY, Plaintiff-Appellee, v. ALLEN D. PETERSEN *et al.*, Defendants-Appellants.

Second District No. 2—99—1232

Opinion filed October 30, 2001.

---

HUTCHINSON, P.J., specially concurring in part and dissenting in part.

Richard T. Franch, Joel T. Pelz, Samuel S. Miller, Matthew J. Thomas, James A. McKenna, and Oliver J. Larson, all of Jenner & Block, of Chicago, and James L. Wright, of Militello, Zanck & Coen, P.C., of Crystal Lake, for appellants American Tool Companies and Petersen Manufacturing Company.

Ronald Wilder, Aaron Kramer, Linda K. Stevens, and Robert Unikel, all of Schiff, Hardin & Waite, of Chicago, and William J. Cowlin, of William J. Cowlin, Ltd., of Crystal Lake, for appellee.

JUSTICE O'MALLEY delivered the opinion of the court:

Defendants, Allen D. Petersen, William F. Wright, Robert W. Brady, Charles D. Peebler, Jr., American Tool Companies, Inc., and Petersen Manufacturing Company, Inc., appeal from an order of the circuit court denying their motion to dismiss the second amended complaint of plaintiff, Newell Company. On this interlocutory appeal, the supreme court has directed us to answer two certified questions.

The first certified question is as follows:

> "Whether the Illinois borrowing statute for limitations periods, 735 ILCS 5/13—210 [(West 1994)], is inapplicable where none of the parties to a cause of action was an Illinois resident at the time the action accrued, but where one of the parties later becomes an Illinois resident within the foreign limitations period."

We hold that our borrowing statute is applicable in the above situation.

The second certified question is as follows:

> "Whether section 218(c) of the Delaware Corporate Code [(Del. Code Ann. tit. 8, § 218(c) (1985))] mandated, pursuant to the

internal affairs doctrine, a maximum ten year term for Section 5(a)—(c) of the Shareholder Agreement entered into by the parties regardless of whether the parties actually agreed upon or intended a longer term."

We hold that the 10-year time limit in section 218(c) of the Delaware corporate code applied to section 5(a)—(c) of the shareholder agreement. We remand.

## BACKGROUND

On August 22, 1997, plaintiff filed a nine-count complaint against defendants Allen D. Petersen (Petersen), William F. Wright, Robert W. Brady (Brady), American Tool Companies, Inc. (ATC), and Petersen Manufacturing Co., Inc. (PMC). On January 25, 1999, plaintiff filed a second amended complaint (complaint) adding Charles D. Peebler, Jr., as a defendant.

In relevant part, the complaint alleges that in 1985 Petersen, Brady, plaintiff, and others who are not parties to this appeal acquired the stock of PMC from other Petersen family members during a leveraged buyout. To effectuate the buyout, ATC was created as a holding company for all outstanding PMC common stock. ATC is a Delaware corporation with its principal place of business in Illinois. Petersen is chairman and chief executive officer of ATC and currently resides in Illinois. Since the buyout PMC has been a wholly owned subsidiary of ATC. Plaintiff also is a Delaware corporation with its principal place of business in Illinois. PMC is a Nebraska corporation with its principal place of business in Nebraska.

In connection with the buyout, a shareholders' agreement and irrevocable proxy were executed on June 21, 1985. Plaintiff attached a copy of the agreement to its complaint. The parties to the agreement include plaintiff, Petersen, Brady and others not relevant to this appeal. The agreement refers to all shareholders other than plaintiff as "Management Shareholders." The agreement provides that all Management Shareholders have the right to transfer shares among themselves. Section 5 of the agreement contains a voting agreement pursuant to which the parties pledged that each of them would vote their ATC stock so as to elect a board of directors for ATC composed of four directors designated by Petersen and three designated by plaintiff.

A provision in the shareholders' agreement entitled "Governing Law" provides:

"This agreement shall be governed by, and construed and enforced with the laws of Nebraska without giving effect to the provisions, policies or principles thereof respecting conflict or choice of laws."

Following the buyout of PMC stock, plaintiff owned 3,500 shares, or about 39%, of the 9,000 outstanding shares of ATC's class A voting stock. Petersen owned 3,972, or about 44%, of the class A shares. Subsequently, plaintiff acquired an additional 1,000 class A shares for a total of 4,500, or 45%, of the outstanding shares.

In June 1992 and November 1994 Petersen purchased stock from other Management Shareholders and thereby obtained a total of 5,530, or 55%, of the class A shares. Plaintiff continued to own the remaining 4,400 class A shares comprising 45% of the total shares. When the June 1992 stock purchases occurred by which Petersen obtained 50.44% of the class A stock, no parties to this action were residents of Illinois. In 1994, Petersen became a resident of Illinois, where he resides today. In December 1996 Petersen removed two of the ATC directors that plaintiff had designated and reduced the board of directors from seven members to five members.

In counts I through IX of its complaint plaintiff alleged, respectively, breach of fiduciary duty, breach of a shareholders' agreement, breach of an employment agreement, breach of covenants of good faith and fair dealing, fraud and fraudulent concealment, oppression of a minority shareholder, civil conspiracy, tortious interference with a shareholders' agreement, and tortious interference with an employment agreement. Each count alleged numerous acts of wrongdoing by defendants.

Counts I, II, IV, V, VI, VII, and VIII of the complaint are all premised partly on Petersen's purchase of the class A voting stock of ATC from other Management Shareholders. Plaintiff asserted that these purchases were coerced by Petersen, who threatened to fire the other Management Shareholders if they refused to sell him their stock. Counts I, II, IV, VI, VII, and VIII are all premised partly on Petersen's removal of the directors plaintiff had designated, which, plaintiff asserted, contravened the voting agreement in section 5 of the shareholders' agreement.

Defendants moved to dismiss the complaint pursuant to sections 2—603(b), 2—615, and 2—619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2—603(b), 2—615, 2—619(a)(5) (West 1998)). They contended, *inter alia*, that plaintiff's causes of action based on Petersen's June 1992 purchases of the class A voting stock of ATC arose in Nebraska while none of the parties were Illinois residents. Therefore, defendants argued, section 13—210 of the Code of Civil Procedure (735 ILCS 5/13—210 (West 1994)) requires that the limitations law of Nebraska, not Illinois, be applied to plaintiffs' contract and tort claims based on Petersen's 1992 stock purchases. Those claims, defendants observe, are barred under Nebraska law.

Defendants also argued that, because the voting agreement contained in section 5 of the shareholders' agreement concerned the internal operations of ATC, the "internal affairs doctrine" mandated that the agreement be deemed controlled by the law of the state of ATC's incorporation, that is, Delaware. Defendants asserted that, by operation of section 218(c) of the Delaware corporate code, which then imposed a 10-year limit on shareholder voting agreements, the voting agreement expired on June 21, 1995, well before Petersen removed the directors plaintiff had designated.

Plaintiff replied that Petersen's establishment of Illinois residency before the Nebraska limitations period expired triggered an exception to section 13—210 as set forth in *McGuigan v. Rolfe*, 80 Ill. App. 256 (1899), and subsequent cases. Plaintiff also argued that the parties' choice of Nebraska law to govern the shareholders' agreement superseded the internal affairs doctrine.

The trial court, holding that section 13—210 did not apply to plaintiff's claims and that Nebraska law governed the shareholders' agreement, denied defendants' motion to dismiss but granted their subsequent motion under Supreme Court Rule 308 (155 Ill. 2d R. 308) to certify the questions indicated above for interlocutory appeal. We initially denied defendants' application for leave to file an interlocutory appeal under Rule 308. The supreme court denied defendants' petition for leave to appeal but, exercising its supervisory power, ordered this court to grant the application for interlocutory appeal and answer the two certified questions.

Concerning the first certified question, defendants first argue that no Illinois case has authoritatively announced that section 13—210 applies only if all parties to the action remain non-Illinois residents until the expiration of the limitations period of the state in which the cause of action accrued. Defendants acknowledge that this "continuous non-Illinois residency requirement" has been recited in many Illinois cases. Nonetheless, defendants assert, the requirement was first announced in the *dicta* of very early supreme court cases such as *Hyman v. Bayne*, 83 Ill. 256 (1876), and *Wooley v. Yarnell*, 142 Ill. 442 (1892), and has since survived exclusively in the *dicta* of later cases, the most recent being *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 309 Ill. App. 3d 730 (1999). Defendants claim that the correct state of the law is represented in the First District case of *First National Bank of Boulder v. Hurlbut*, 224 Ill. App. 297 (1922), in which the court applied the foreign statute of limitations despite the fact that not all the parties maintained non-Illinois residency continuously until the foreign limitations period expired.

Defendants next argue that the continuous non-Illinois residency

requirement contravenes the legislature's purpose in enacting section 13—210 of promoting uniformity of limitations periods and discouraging forum shopping. Defendants maintain that the requirement encourages forum shopping by permitting a plaintiff to gain the benefit of Illinois limitations law simply by taking up residence in Illinois prior to the expiration of the applicable foreign limitations period. Defendants also urge that the requirement permits a plaintiff to seize upon the fact that any party to the suit happens to establish Illinois residency before the expiration of the foreign limitations period. The requirement also destroys uniformity, defendants submit, by making the controlling limitations period change with the residencies of the parties.

Plaintiff responds that the Illinois courts' construction of section 13—210 as containing a continuous non-Illinois residency requirement enjoys the force of law because it has been stated unequivocally in Illinois cases for over a 100 years. Plaintiff contends that *Hurlbut* is consistent with the requirement, as was later recognized by the First District itself in *Orschel v. Rothschild*, 238 Ill. App. 353 (1925).

Concerning the second certified question, defendants argue that Illinois, Nebraska, and Delaware all follow the "internal affairs" doctrine, according to which a state should not regulate the internal operations of a foreign corporation but leave such governance to the state of incorporation. Relying primarily on the Delaware cases of *Rosenmiller v. Bordes*, 607 A.2d 465, 469 (Del. Ch. 1991), and *McDermott Inc. v. Lewis*, 531 A.2d 206 (Del. 1987), the defendants submit that the internal affairs doctrine is grounded not only in sound policy but in the constitutional principles of due process, equal protection, and full faith and credit. The parties' choice of law provision must yield to these interests, defendants assert.

In response, plaintiff argues that it is the internal affairs of PMC, not ATC, that plaintiff's claims concern because ATC was a mere "shell" company for PMC when the wrongful acts plaintiff alleges occurred. As PMC is incorporated in Nebraska, whose law the parties chose to govern the shareholders' agreement, there is no conflict between the choice of law provision and the internal affairs doctrine. Plaintiff alternatively argues that this case falls within an exception to the internal affairs doctrine because ATC's only contact with Delaware is the fact that it was incorporated there.

## ANALYSIS

### I. The First Certified Question

Because they only fix the time within which the remedy for a particular wrong may be sought and are not designed to alter substan-

tive rights, statutes of limitations generally are considered procedural in nature. *Fredman Brothers Furniture Co. v. Department of Revenue*, 109 Ill. 2d 202, 209 (1985). Generally, the *lex fori*, or law of the forum in which relief is sought, governs matters of procedure. *Marchlik v. Coronet Insurance Co.*, 40 Ill. 2d 327, 329 (1968). Thus, an action cannot be maintained in the forum state if it is barred either by the statute of limitations of the forum state or by a statute of limitations that the forum state has "borrowed" from another jurisdiction in accordance with the forum state's "borrowing statute." Restatement (Second) of Conflicts of Law § 142, at 396-97 (1971). The Illinois borrowing provision, codified in section 13—210, states:

> "Foreign limitation. When a cause of action has arisen in a state or territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reasons of the lapse of time, an action thereon shall not be maintained in this State." 735 ILCS 5/13—210 (West 1994).

The borrowing provision is identical to its former embodiment in section 20 of the Limitations Act (Ill. Rev. Stat. 1969, ch. 83, par. 21). We use section 13—210 and section 20 interchangeably in what follows.

According to the most recent published Illinois case construing section 13—210, the section applies where (1) the cause of action accrued in another jurisdiction; (2) the limitations period of that jurisdiction has expired; and (3) all parties were non-Illinois residents at the time the action accrued and remained so until the foreign limitations period expired. *Ehlco*, 309 Ill. App. 3d at 737. The parties do not dispute that plaintiff's causes of action accrued in Nebraska when no party was an Illinois resident. Thus, we are concerned only with the question of whether Illinois has a continuous non-Illinois residency requirement that would preclude the application of the Nebraska limitations statute due to Petersen's having established Illinois residency before the Nebraska limitations period expired.

■ Relevant to the discussion that follows is the interplay of section 13—210 with section 13—208(a) of the Code of Civil Procedure (735 ILCS 5/13—208(a) (West 1994)), which provides:

> "Absence from State. (a) If, when the cause of action accrues against a person, he or she is out of the state, the action may be commenced within the times herein limited, after his or her coming into or return to the state; and if, after the cause of action accrues, he or she departs from and resides out of the state, the time of his or her absence is no part of the time limited for the commencement of the action." 735 ILCS 5/13—208(a) (West 1994).

Section 13—208(a) formerly was section 18 of the Limitations Act (Ill. Rev. Stat. 1969, ch. 83, par. 19) (section 18). Section 18 included a provision that immediately followed the above text:

"But the foregoing provisions of this section shall not apply to any case, when, at the time the cause of action accrued or shall accrue, neither the party against nor in favor of whom the same accrued or shall accrue, were or are residents of this state." Ill. Rev. Stat. 1969, ch. 83, par. 19.

In *Haughton v. Haughton*, 76 Ill. 2d 439, 444-46 (1979), the supreme court held that this residency requirement violated equal protection guarantees. The residency requirement does not appear in the present text of section 13—208(a).

After close review of the relevant cases, we conclude that the continuous non-Illinois residency requirement is the product of a misinterpretation of our supreme court's analysis and holding in *Bayne*, 83 Ill. 256, decided in 1876. Notably, while the requirement that all parties to a suit be non-Illinois residents at the time the cause of action accrues has been carefully justified through statutory construction, there has been no attempt at a rationale for the requirement that all parties to a cause of action remain non-Illinois residents until the expiration of the limitations period of the jurisdiction in which it arose. Instead, the requirement has been continually recited without a question as to its underpinnings in legal analysis or policy. Moreover, the most recent supreme court cases applying section 20 seem to ignore the requirement, giving us reason to believe it is at least disfavored if it has not been discarded *sub silentio*.

We explain our holding by tracing the development of the continuous non-Illinois residency requirement. As authority for its recitation of the requirement, *Ehlco* relies on *Miller v. Lockett*, 98 Ill. 2d 478 (1983), *Coan v. Cessna Aircraft*, 53 Ill. 2d 526 (1973), *Delta Bag Co. v. Frederick Leyland & Co.*, 173 Ill. App. 38 (1912), and *National Bank of Denison v. Danahy*, 89 Ill. App. 92 (1899). *Coan* relies on *Davis v. Munie*, 235 Ill. 620 (1908), *Strong v. Lewis*, 204 Ill. 35 (1903), *Wooley*, 142 Ill. 442, *Delta Bag*, 173 Ill. App. 38, *Berry v. Krone*, 46 Ill. App. 82 (1891), and *Story v. Thompson*, 36 Ill. App. 370 (1890). *Miller* relies on *Orschel v. Rothschild*, 238 Ill. App. 353 (1925), *Chicago Mill & Lumber Co. of Cairo v. Townsend*, 203 Ill. App. 457 (1916), and *Delta Bag*, 173 Ill. App. 38. From these cases and the cases they cite, the lineage of the continuous non-Illinois residency requirement can be traced back to three foundational cases: *Wooley*, *Bayne*, and *Hyman v. McVeigh*, 87 Ill. 708 (1877) (unpublished opinion). *McVeigh* is unpublished, but its full text is reproduced in 10 *Chicago Legal News*, at 157 (1877).

The continuous non-Illinois residency requirement is in its nascency in *Wooley*. In *Wooley*, the plaintiff's cause of action accrued in Illinois while she and the defendant were residents of Illinois. The defendant subsequently left Illinois and established residence first in

Massachusetts and then in New Hampshire, where he remained when plaintiff filed suit. Citing section 20 (then Ill. Rev. Stat. 1874, ch. 83, § 20) defendant argued that the suit was barred under the New Hampshire statute of limitations. The court construed section 20 as providing:

> "Where the maker of a promissory note, and the payee, reside out of this State when the note becomes due, and the cause of action accrues in another State, and the maker continues to reside out of the State and in another State, until, by the laws of such State, an action on the note is barred, [section 18], when pleaded to an action brought on such note in this State, may constitute a bar to such action." *Wooley*, 142 Ill. at 449.

The court remarked that this was "the doctrine" of *Bayne* and *McVeigh*. *Wooley*, 142 Ill. at 449, citing *Bayne*, 83 Ill. 256, and *McVeigh*, 87 Ill. 708.

This early formulation of the continuous non-Illinois residency requirement is similar to the current version in *Ehlco* in that it conditions the application of section 20 on the maker of the promissory note having resided outside Illinois when the cause of action accrued and until the expiration of the limitations period of the state in which the cause of action accrued. However, unlike the *Ehlco* formulation, this formulation does not require the payee as well as the maker of the note to continuously reside outside Illinois; *i.e.*, it does not require *all* parties, rather than just one, to reside continuously outside Illinois.

Proceeding to explain the origin of the requirement, the *Wooley* court observed that, in both *Bayne* and *McVeigh*, "the maker and payee both resided out of this State at the maturity of the cause of action sued on and when the cause of action accrued, and so remained until an action was barred in and by the laws of the foreign State where the domicil existed." *Wooley*, 142 Ill. at 449. The court then found that the defendant's pleadings "[did] not contain averments sufficient to bring them within the rule indicated." *Wooley*, 142 Ill. at 449. The court explained that, because the defendant did not allege that he was a nonresident of Illinois when the cause of action accrued, section 20 did not control and the Illinois statute of limitations applied instead. Moreover, by virtue of section 18 (then Ill. Rev. Stat. 1874, ch. 83, § 18), the Illinois limitations period was tolled during the defendant's absence from Illinois.

A close review of *Bayne* and *McVeigh* is needed to understand how the *Wooley* court gleaned from them its version of the continuous non-Illinois residency requirement. In *Bayne*, the plaintiff sued defendant to recover money plaintiff had lent defendant. The plaintiff and the

defendant were non-Illinois residents when plaintiff's cause of action accrued in Maryland, and they remained so until after the Illinois statute of limitations had run. The plaintiff sued in Illinois and the defendant, then a resident of New York, argued that the suit was untimely under the limitations laws of both Illinois and Maryland. The court framed the issue on appeal as "whether, under our limitations laws ***, when both parties have, at all times, resided continuously beyond the limits of this State for the statutory period, a bar to recovery is created." *Bayne*, 83 Ill. at 258. The plaintiff argued that the suit was not barred because the Illinois limitations period was tolled while the defendant was residing outside the state. The plaintiff pointed to section 13 of the Limitations Act (Ill. Rev. Stat. 1845, ch. 66, § 13) (later section 18), which provided:

> "If any person or persons against whom there is or shall be any cause of action, as is specified in the preceding sections of this chapter, except real or possessory actions, shall be out of this State at the time of the cause of such action accruing, or any time during which a suit might be sustained on such cause of action, then the person or persons who shall be entitled to such action[ ] shall be at liberty to bring the same against such person or persons after his, her or their return to this State, and the time of such person's absence shall not be accounted as part of the time limited by this chapter." Ill. Rev. Stat. 1845, ch. 66, § 13.

Interpreting "return to this State" as presupposing that the individual previously had been in the State and noting that there was no allegation that defendant ever was a resident of Illinois, the court affirmed the trial court's holding that section 13's tolling provision did not apply and that the plaintiff's suit was barred. *Bayne*, 83 Ill. at 259-60.

The court, however, disagreed with the trial court that section 20 did not apply. The plaintiff explained that his cause of action, which arose in Maryland, was barred under Maryland's statute of limitations when section 20 was passed in 1872. The plaintiff argued that section 20 did not apply to actions already barred by the relevant foreign statute of limitations when the section was passed. The court disagreed, holding that section 20, by its plain language, applied to actions already barred by the relevant foreign statute of limitations. The court then observed that this application of section 20 did not deprive plaintiff of a "fixed or vested right." *Bayne*, 83 Ill. at 262. Appellant had no cause of action in Maryland "nor had he any [in Illinois] until the [defendant] should come into this State." *Bayne*, 83 Ill. at 262. All the plaintiff had "was the bare contingency that [the defendant] might, by possibility, come into this State, and that he might learn of

the fact in time to sue him, and obtain service before he should leave."
*Bayne*, 83 Ill. at 262.

Lastly, the court rejected the plaintiff's argument that the defendant did not properly plead Maryland's statute of limitations as a defense because the defendant did not allege that the Maryland limitations period was not tolled by the defendant's leaving Maryland for New York. The court reasoned that it was sufficient that the defendant pleaded the Maryland statute of limitations as a defense; the defendant need not have pleaded that Maryland did not have a provision that tolled the limitations period while he was outside Maryland. *Bayne*, 83 Ill. at 264-65.

Nowhere in *Bayne* did the supreme court state that a prerequisite to section 20's application was the non-Illinois residency of all parties, let alone the continuous non-Illinois residency of all parties. The court did mention that the defendant had remained outside Illinois until the expiration of the limitations period, but the limitations period referenced was the *Illinois* limitations period, not a foreign limitations period, and, moreover, the court's remarks about the defendant's non-Illinois residency concerned only the applicability of section 13's tolling provision. The sole issue the *Bayne* court addressed with respect to the borrowing provision in section 20 was its retroactive application; the court neither explicitly nor implicitly construed section 20 as containing an exception based on residency. We can only conclude that *Bayne*'s analysis of section 13, including its comments about the continuous non-Illinois residency of the defendant, have been appropriated by later cases and applied to section 20.

Also, the following remarks by the *Bayne* court about section 13 easily could have been misinterpreted:

> "It is urged that a person can not [sic] return to the State unless he had previously been in the State, and hence the saving clause of [section 13] has no application where the statutory period has expired, and the debtor has never been within the State, and that when the debtor resides out of the State, and the creditor is a non-resident, that statute creates a bar to the action. This is the language of the statute. A person can not [sic] return to a place until he has previously been at that place. This proposition is self-evident. It can not [sic] be rendered plainer by illustration or by reasoning." *Bayne*, 83 Ill. at 259-60.

Here the court is recapitulating the defendant's argument that the tolling provision in section 13 did not apply. The factual situation described in that argument is, of course, the factual situation before the court in *Bayne*. But the factual situation described by the court contains more facts than necessary to establish that section 13 does

not apply. Specifically, there is a statement concerning the residency of the creditor, *i.e.*, the plaintiff. Section 13, however, is concerned only with the residency of the party *against whom* a cause of action has arisen. Section 13 is not concerned with the fact that the plaintiff was a nonresident of Illinois. We conclude that, combined with the court's comments about the continuous non-Illinois residency of the defendant, these comments about the non-Illinois residency of the plaintiff may have misled later courts into believing that *section 20* requires continuous non-Illinois residency of *both* parties.

*McVeigh* appears to be a companion case to *Bayne* although the procedural connection between the two is not clear from either opinion. In *McVeigh*, the court noted that the issues before it were "determined in the main" by the decision in *Bayne. McVeigh*, 87 Ill. 708. As in *Bayne*, the court reversed the trial court's judgment in favor of the plaintiff. The court asserted that, despite "able and interesting" argument to the contrary, it would retain the construction of the "statutes" articulated in *Bayne. McVeigh*, 87 Ill. 708. The court noted that the defendant argued that the limitations law of New York applied to the plaintiff's claims because the defendant resided there. The court remarked that this argument was "not essentially different" from the defendant's argument in *Bayne* that the limitations law of Maryland barred the plaintiff's suit. *McVeigh*, 87 Ill. 708. The court followed this statement with an interpretation of section 20:

> "The words 'when a cause of action has arisen,' as they occur in [section 20], should be construed as meaning, when jurisdiction exists in the courts of a state to adjudicate between the parties upon the particular cause of action, if properly invoked; or, in other words, when the plaintiff has the right to sue the defendant in the courts of the state upon the particular cause of action, without regard to the place where the cause of action had its origin. This was the view taken in [*Bayne*] *** although not discussed at length in the opinion, and we do not conceive that the question need be discussed now." *McVeigh*, 87 Ill. 708.

Unfortunately, the court says nothing more about the issue. Teasing out the unstated premises, we see the court as reasoning that, although plaintiff's cause of action did not "originate" in New York, the cause of action "arose" in New York for purposes of section 20 because New York had, at least at one time, jurisdiction to adjudicate plaintiff's cause of action.

The court's adoption of what it regarded as *Bayne*'s construction of section 20 is confusing. Nowhere in *Bayne* did the court construe section 20 in this fashion. *Bayne* announced its definition of when a cause of action has arisen only to rebut the argument that the plaintiff

in that case would lose a vested right if section 20 were applied to a cause of action whose limitations period had already expired when section 20 was enacted. See *Bayne*, 83 Ill. at 262-63. Although *McVeigh* had the authority per its powers of statutory construction to find this definition embodied in section 20, *Bayne* was not direct precedent for such a construction. At any rate, whatever may be drawn from *McVeigh*, the opinion nowhere recites or implicitly applies the continuous non-Illinois residency requirement.

The next relevant supreme court case in the history of the continuous non-Illinois residency requirement is *Strong v. Lewis*, 204 Ill. 35 (1903). In *Strong*, the question was "the effect section 20 of the Limitation act has upon causes of action arising outside of this State where both parties are non-residents." *Strong*, 204 Ill. at 36. The plaintiff sued on promissory notes that were executed in West Virginia and made payable in Virginia. Neither party was a resident of Illinois when the notes came due. The defendant became a resident of New York after the notes came due and remained there until the limitations period of that state expired. The defendant then became a resident of Illinois. The court rejected the plaintiff's argument that, since the cause of action accrued in Virginia, that state's limitations law applied. Disagreeing and holding that the New York limitations period applied, the court reasoned:

> "We are of the opinion *** that when [the plaintiff] permitted [the defendant] to go into the State of New York and permitted the bar of the statutes of that State to become complete, he lost all right, under the laws of Illinois, thereafter to maintain suit against him, and that when he came into the State of Illinois he came clothed with all the privileges that the law of the State of New York conferred upon him. This question we have decided in the case of [*McVeigh*] ***." *Strong*, 204 Ill. at 37, citing *McVeigh*, 87 Ill. 708.

The court stated with approval *McVeigh*'s interpretation of section 20 and added that the interpretation was followed in *Wooley*. *Strong*, 204 Ill. at 37, citing *Wooley*, 142 Ill. 442, and *McVeigh*, 87 Ill. 708.

The *Strong* court, then, concluded that the plaintiff's cause of action arose in New York for purposes of section 20. Presumably, based on what can be inferred from *McVeigh*, the court held as such because the defendant resided in New York and thus plaintiff could have sued him there. Why, however, the court found it significant that the defendant remained in New York until the expiration of New York's limitations period is uncertain. According to *McVeigh*'s interpretation of section 20, it would seem that the defendant's presence in New York alone would have triggered section 20.

In any event, *Davis*, the next important supreme court case for

our purposes, severely curtailed the *McVeigh/Strong* interpretation of section 20. Reexamining *Bayne,* the court held that *Bayne's* definition of when a cause of action arises was relevant only to *Bayne's* discussion of whether section 20 applied to causes of action already barred when it was passed. *Davis,* 235 Ill. at 623-24. In place of the *McVeigh/Strong* definition of when a cause of action arises, *Davis* held that a cause of action accrues or arises "when facts exist which authorize one party to maintain an action against another." *Davis,* 235 Ill. at 622. Where the parties happen to reside is irrelevant, except as the law of the state of residence "may affect rights arising out of the facts." *Davis,* 235 Ill. at 622. Thus, *Davis* undercuts *McVeigh* and *Strong* insofar as they read section 20 as embodying *Bayne's* definition of when a cause of action arises.

*Davis* also is important for its assertion that *Bayne, McVeigh* and *Lewis* all held:

> "[W]here the maker and payee of a promissory note both resided out of this State at the time of its maturity, a cause of action arose in the State where the payee resided and in any other to which he removed, and if he resided in any State long enough to be entitled to the protection of the Statute of Limitations of such State, such statute would be treated as a bar in this State under section 20 of our Limitations act; but if the defendant resided in this State at the date of the maturity of his note and afterward removed to another State and resided there during the full period of limitation as provided by the statute of such other State, while a cause of action would have arisen against him in such other State he would not be entitled to the benefit of section 20 of our Limitation act because of the provision of section 16 which saves to the plaintiff, during the defendant's residence out of the State, the benefit of the cause of action which had accrued before his departure." *Davis,* 235 Ill. at 623.

*Davis* propagates *Wooley's* erroneous interpretation of *Bayne. Bayne,* as explained above, did not rule that the application of section 20 hinges on whether the person against whom a cause of action has arisen retained continuous non-Illinois residency until the expiration of the limitations period of the state in which the cause of action accrued. The above passage also shows that the continuous non-Illinois residency requirement is still in development in *Davis. Davis* mentions nothing about the residency of the plaintiff and, thus, is not itself authority for the requirement that all parties retain non-Illinois residency until the expiration of the foreign limitations period.

In the 1899 First District case of *McGuigan v. Rolfe,* 80 Ill. App. 256 (1899), we find the first full pronouncement of the continuous non-Illinois residency requirement. In *McGuigan,* the court concluded,

based on *Bayne, McVeigh,* and *Wooley,* that "[t]he construction of section 20 *** must *** be limited and confined to causes where not only both parties resided out of this State when the action accrued, but both parties continued to reside out of the State, and 'so remained until an action was barred in and by the laws of the foreign State where the domicile existed.' " *McGuigan,* 80 Ill. App. at 259, quoting *Wooley,* 142 Ill. at 449. Notably, the last clause in this passage is drawn from *Wooley's* statement of the facts in *Bayne* and *McVeigh.* As noted above, the *Wooley* court apparently misunderstood the significance of the facts in *Bayne. Bayne* did cite the fact that the defendant in that case remained a non-Illinois resident until the limitations period expired. However, the court cited this fact in addressing the applicability of the *Illinois* limitations period under section 13 (now section 18), not a foreign statute of limitations under section 20. Also, as noted above, while *Bayne* did reference the plaintiff's non-Illinois residency in analyzing section 13, it did so needlessly because section 13 was concerned only with the party against whom a cause of action has arisen. *Bayne* did not address whether section 20 has a non-Illinois residency requirement much less a *continuous* non-Illinois residency requirement.

Another problem with the *McGuigan* holding is that it is based on an interpretation of section 20 that the supreme court would later reject in *Davis. Davis,* as we noted, held that *Bayne's* definition of when a cause of action arises was relevant only to the question of whether section 20 could be applied to causes of action already barred when it was passed. *Davis,* 235 Ill. at 623-24.

Citing *Bayne, McVeigh, Wooley, Strong,* and *McGuigan,* cases since *McGuigan* continue to recite and apply the continuous non-Illinois residency requirement. See, *e.g., Orschel,* 238 Ill. App. at 359; *Delta Bag,* 173 Ill. App. at 41. None of these cases provides a rationale for the requirement. Rather, all cite cases that ultimately lead back to the foundational cases from the nineteenth century.

We disagree with plaintiff that the result reached in *Hurlbut,* 224 Ill. App. 297, is inconsistent with a continuous non-Illinois residency requirement. In *Hurlbut,* the defendants were residents of Colorado when plaintiff's cause of action accrued there. Subsequently, but before the Colorado limitations period expired, the defendants became Illinois residents. The plaintiff sued the defendants in Illinois after the Colorado limitations period expired. Defendants argued that, pursuant to section 20, the Colorado statute of limitations applied to the plaintiff's cause of action. Affirming the trial court's order dismissing the plaintiff's suit, the appellate court rejected the plaintiff's contention that section 20 was inapplicable because the defendants moved to

Illinois within the Colorado limitations period. *Hurlbut*, 224 Ill. App. at 299-300. Thus, the court found section 20 applicable even though not all parties to the suit retained continuous non-Illinois residency until the expiration of the foreign limitations period. Plaintiff directs us to *Orschel*'s assertion that *Hurlbut* is consistent with the continuous non-Illinois residency requirement (see *Orschel*, 238 Ill. App. at 359-60), but we find that statement simply erroneous.

We recognize that *Hurlbut* was an isolated deviation from a string of appellate court cases decided early in the twentieth century that consistently reiterated the continuous non-Illinois residency requirement. To us, however, *Hurlbut* indicates some instability in the appellate courts' interpretation of section 20 and also foreshadows the seeming abandonment of the continuous non-Illinois residency requirement by the supreme court within the last 30 years.

*Miller* and *Coan*, both decided within the last 30 years, can be construed as signaling a change in the court's construction of section 20. We disagree with plaintiff that *Miller* and *Coan* are indisputable authority for a continuous non-Illinois residency requirement in section 20.

In *Coan*, the court observed that section 20 "was intended to apply only to cases involving nonresident parties." *Coan*, 53 Ill. 2d at 529. Immediately we see a variation from past recitations of section 20's residency requirement in that the court fails to state *when* the parties must be nonresidents for section 20 not to apply.

The *Coan* court reversed the trial court's order granting the defendants' motion to dismiss plaintiff's suit under the Kentucky statute of limitations. The court held that the trial court erred in reading section 20 to apply even where one of the parties was a resident of Illinois. *Coan*, 53 Ill. 2d at 528-30.

The court attributed this error to the trial court's failure to read section 20 together with section 18's tolling provision. Unlike section 18, the court explained, section 20 does not exclude from the limitations period the length of time a party against whom a cause of action accrues is absent from Illinois. Thus, the court observed, where a cause of action that, having accrued outside Illinois while the parties thereto were Illinois residents, expires under the foreign limitations statute while the defendant is absent from Illinois, section 20 would automatically bar suit but section 18 would exclude from the limitations period the time the defendant was absent from Illinois. *Coan*, 53 Ill. 2d at 528-29. Deferring to the rule that courts should strive to construe the provisions of the same statute as being consistent, the court held that section 20 must be read as applying only to actions involving parties who are nonresidents of Illinois. *Coan*, 53 Ill. 2d at

529. The court supplemented its reasoning by incorporating a passage from *Orschel*:

> " 'In such a case, that is of diverse residence, it has been held that section 20 does not apply, and that section 20 only applies to cases where both debtor and creditor are nonresidents of this State when the cause of action accrues. The interrelationship of sections 18 and 20 are [*sic*] well set forth by Mr. Justice Wall in the *Berry* case, *supra* [*Berry v. Krone*, 46 Ill. App. 82 (1892)]. He there says: "It will be seen by the second paragraph of section 18, it is provided the preceding provisions are not to apply to any case where neither debtor nor creditor resides in the State when the cause of action accrues. Section 20 then applies to the cases not covered by section 18; that is, to cases where both debtor and creditor are nonresidents when the cause of action accrues. It cannot be supposed that the legislature intended by section 20 to nullify and sweep away the provision contained in section 18, and yet this is what has been done unless section 20 is construed to apply only to those cases which are, by the latter clause of section 18, carved out and excepted from its operation." ' " *Coan*, 53 Ill. 2d at 529-30, quoting *Orschel*, 238 Ill. App. at 358, quoting *Berry*, 46 Ill. App. at 84-85.

*Coan* raises a concern because the court uses *Orschel*'s rationale to reach a different conclusion than *Orschel* did. As the above passage indicates, *Orschel* holds that, in light of section 18, section 20 must be interpreted to apply only to cases involving parties who were non-Illinois residents *when the cause of action accrued. Orschel*, 238 Ill. App. at 358. *Coan*, however, concludes that "section 20 was intended to apply only to cases involving nonresident parties," and provides no further restriction. *Coan*, 53 Ill. 2d at 529. That the court reversed the trial court with the lone observation that "[t]he record shows that the plaintiff and defendant Gene Siebert *are* clearly residents of Illinois" (emphasis added) (*Coan*, 53 Ill. 2d at 527) implies that it was not the residency of the parties at the time the cause of action accrued that was determinative for the court but, rather, their residency at the time the court's disposition was written or, at the earliest, when the suit was filed.

Nor, moreover, was it a concern for the court whether or not the parties maintained non-Illinois residency until the Kentucky limitations period expired. Plaintiff and the one defendant might have remained non-Illinois residents until the Kentucky limitations period expired, in which case they would have fulfilled the continuous non-Illinois residency requirement, and, consequently, the Kentucky limitations period would have applied under section 20 as interpreted in *Ehlco*. Silent on when the plaintiffs and the one defendant became Illinois residents, the court declined to apply section 20.

In *Miller*, the supreme court reaffirmed the holding in *Coan* and held that section 20 did not apply to the action before it because the plaintiffs were Illinois residents. *Miller*, 98 Ill. 2d at 480-83. As in *Coan*, the court did not appear to concern itself with whether the parties were non-Illinois residents when the cause of action accrued or whether they remained so until the foreign limitations period ran.

The question in *Miller* was whether the supreme court's invalidation in *Haughton* of section 18's exception for cases in which all parties were non-Illinois residents when the cause of action accrued implicitly overruled *Coan*'s holding that section 20 contained a non-Illinois residency requirement. The court first observed that *Haughton* did not mention *Coan* nor did it address section 20. *Coan*'s interpretation of section 20 became part of section 20 itself, the court explained, and has not been undone by legislative modification. Further, the court reasoned, a statute need not be valid and existing to be interpreted *in pari materia* with another statute. *Miller*, 98 Ill. 2d at 484. Thus, to consider *Coan*'s interpretation of section 20 to have been undermined by *Haughton*'s invalidation of section 20's residency exception would be to confuse the validity of section 18 with its role in the construction of section 20. *Miller*, 98 Ill. 2d at 484, citing 2A A. Sutherland, Statutory Construction § 51.04 (4th ed. 1973). Finally, the court rejected the defendant's constitutional challenge to section 20's residency exception. *Miller*, 98 Ill. 2d at 484-86.

We do not regard *Miller* as authority for the continuous non-Illinois residency requirement. Nowhere in *Miller* did the court recite the continuous non-Illinois residency requirement. While the court cited cases that do state the requirement (see *Miller*, 98 Ill. 2d at 481-82, citing *Orschel*, 238 Ill. App. 353, *Chicago Mill*, 203 Ill. App. 457, and *Delta Bag*, 173 Ill. App. 38), its application of section 20 to the facts before it illustrated a divergent interpretation. *Miller* held that section 20 was inapplicable with the bare observation that the plaintiffs were Illinois residents. Yet the plaintiffs might have been non-Illinois residents until the Tennessee limitations period expired, in which case the continuous non-Illinois residency requirement would have been fulfilled and Tennessee law would have applied. The court's failure to mention when the plaintiffs became Illinois residents suggests that fact was of no significance to the court.

We reject plaintiff's argument that the continuous non-Illinois residency requirement is necessitated by the conflict between the plain text of section 18 and section 20 that the supreme court addressed in *Orschel* and *Miller*. Before it was amended, section 18 created an exception to the tolling of the Illinois limitations period for cases in which neither party was an Illinois resident when the cause of

action accrued. See Ill. Rev. Stat. 1969, ch. 83, par. 19. As explained above, *Orschel* and *Coan* recognized that section 18 and section 20 could be harmonized only if section 20 was interpreted as applying where section 18 did not, that is, to cases where neither party was an Illinois resident when the cause of action accrued. See *Coan*, 53 Ill. 2d at 528-29; *Orschel*, 238 Ill. App. at 358-59. Section 18, however, did not contain an exception for cases in which the parties were non-Illinois residents when the cause of action accrued *and remained so until the applicable foreign limitations period expired.* Indeed, never in any of its codifications did the Illinois tolling provision address foreign limitations periods. Therefore, dictates of statutory interpretation do not compel us to read section 20 as containing a requirement based on the *continuous* non-Illinois residency of the parties.

The supreme court's construction of section 20 as stated in *Coan* and *Miller* has been followed by the appellate courts. See, *e.g.*, *Ko v. Eljer Industries, Inc.*, 287 Ill. App. 3d 35, 42 (1997) (stating that the borrowing statute "is only applied when none of the parties are Illinois residents" and holding that the statute did not apply because one of the parties was an Illinois resident); *LeBlanc v. G.D. Searle & Co.*, 178 Ill. App. 3d 236, 237 (1988) (stating that the borrowing statute "is applied only where none of the parties are Illinois residents").

■ We conclude, then, that the continuous non-Illinois residency requirement was conceived in the misconstruction of a case from 1876, that subsequent cases have perpetuated the requirement without re-examining its foundation in case law, and, finally, that the most recent supreme court cases to apply section 20 have ignored the requirement.

We find no Illinois case that has offered a colorable policy justification for the continuous non-Illinois residency requirement. *Miller* and *Panchinsin v. Enterprise Cos.*, 117 Ill. App. 3d 441 (1983), are the only Illinois cases to attempt such a justification for a residency requirement in section 20. In *Miller*, the court suggested that the purpose of the residency requirement in section 20 was to promote uniformity of periods of limitations and to discourage forum shopping. *Miller*, 98 Ill. 2d at 485-86. However, as noted above, the residency requirement that *Miller* contemplated and attempted to justify apparently was not the *continuous* non-Illinois residency requirement. Moreover, as explained below, the requirement that all parties retain continuous non-Illinois residency actually defeats the ends *Miller* proposes.

In *Panchinsin*, the court reiterated *Coan*'s holding that " '[section 20] was intended to apply only to cases involving nonresident parties,' " and held that section 20 did not apply to the plaintiff's tort action because the defendants were Illinois residents. *Panchinsin*, 117 Ill. App. 3d at 445, quoting *Coan*, 53 Ill. 2d at 529. Responding to the

defendants' argument that there was no rational basis for denying them, Illinois residents, the protection of the borrowing statute, the court suggested that the legislature, in creating the residency requirement, could have concluded:

> "(1) Illinois residents who commit torts are more likely to injure other Illinois residents, and (2) refusing to permit Illinois residents to take advantage of a shorter than generally available limitations period (through application of the borrowing statute) would promote the health, safety, and welfare of our citizens by encouraging Illinois residents to maintain higher safety standards." *Panchinsin*, 117 Ill. App. 3d at 447.

Whatever its accuracy, the prediction that Illinois residents who commit torts are more likely to injure other Illinois residents is a prediction concerning the parties' residency at the time the tortious conduct occurs or, roughly, when the cause of action in tort accrues. Hence it would seem to justify a rule that the borrowing statute does not apply when a defendant (or perhaps, any party) is an Illinois resident when the cause of action accrues. The prediction, however, is irrelevant to a party's establishment of Illinois residency *after* a cause of action in tort accrues. In any event, *Panchinsin* apparently was not attempting to rationalize the continuous non-Illinois residency requirement because, like *Coan* before it, and *Miller* after it, *Panchinsin* held that section 20 applies only to cases involving nonresident parties. See *Panchinsin*, 117 Ill. App. 3d at 443. There is no statement in any of these cases as to when a party must be an Illinois resident for the borrowing statute not to apply. In each case, the court found it sufficient that a party was an Illinois resident when the cause of action was filed or, at least, when the case reached the appellate court. In none of these cases does the court provide any rationale for departing from previous interpretations of section 20.

■ The state of the law regarding section 20 being so unsettled, we find a reevaluation appropriate. In our view, the continuous non-Illinois residency requirement has fatal flaws. First, it draws an arbitrary distinction. As interpreted in *Ehlco* and earlier cases, section 20 applies the relevant foreign limitations period to an action if all parties maintain non-Illinois residency until that limitations period expires. See, *e.g.*, *Ehlco*, 309 Ill. App. 3d at 737. Thus, the foreign limitations period applies where a party becomes an Illinois resident the day after the foreign limitations period expires but not where a party becomes an Illinois resident the day before the limitations period expires. No Illinois court has attempted a rationale for this distinction nor can we conceive of any adequate rationale. Perhaps the distinction contemplates that a plaintiff who took up residence in our state after

the foreign limitations period expired is more likely to be guilty of opportunism than a plaintiff who, with no intention of fleeing a foreign state's justice, established residence in Illinois the day before the foreign limitations period expired and, the next day, after that period expired, recognized and attempted to capitalize on the open Illinois limitations period. In our view, however, where a cause of action arises in another jurisdiction between parties who were then non-Illinois residents, our state does not attain a closer connection to the dispute if the plaintiff moves here on a Monday rather than a Tuesday.

Even if the distinction is rational as applied to the interstate movement of some plaintiffs, we still do not see how the mere fact that *any* one party—whether plaintiff or defendant, whether intimately or tangentially connected to a controversy—who establishes residency in our state after the cause of action accrues in another jurisdiction gives our state a sufficient interest in that controversy to justify our imposing upon it our statute of limitations. Rather than promoting uniformity and discouraging forum shopping, the continuous non-Illinois residency requirement invites a plaintiff to extend the limitations period on his foreign cause of action simply by establishing Illinois residency before that period expires or by taking advantage of the fact that any other party to the suit became an Illinois resident within that time. Likewise, a defendant can gain the benefit of a shorter limitations period in Illinois simply by leaving the state in which the cause of action accrued and establishing residency in Illinois before the longer foreign limitations period expires or by taking advantage of the fact that any other party to the suit became an Illinois resident within that time.

■ Plaintiff suggests that the holdings of *Miller* and *Coan* became part of the borrowing statute when it was subsequently reenacted without any alteration to its text. See 735 ILCS 5/13—210 (West 1992) (amending Ill. Rev. Stat. 1991, ch. 110, par. 13—210). Plaintiff relies on the rule that the legislature is presumed to know the judicial construction that a statute has been given and, by reenacting the statute without modification, is assumed to have intended the statute to have effect as previously construed in the courts. *Nevious v. Bauer*, 281 Ill. App. 3d 911, 915 (1996).

Our holding that the *Miller/Coan* construction of section 20 is codified in section 13—210 would not give us the answer to the certified question because, as we made quite clear above, we cannot discern with any reasonable degree of assurance just how *Miller* and *Coan* construed section 20. In citing cases that reiterated the continuous non-Illinois residency requirement, *Miller* and *Coan* said nothing more about section 20 than that it applies only where none of the par-

ties is an Illinois resident. See *Miller*, 98 Ill. 2d at 481-82; *Coan*, 53 Ill. 2d at 529. In neither case did the court say *when* the parties must be non-Illinois residents for section 20 to apply. In neither case did the court even indicate whether Illinois residency was established before or after the relevant foreign limitations period expired. Thus, *Miller* and *Coan* do not provide us an answer to the certified question of whether the borrowing statute is applicable where one of the parties becomes an Illinois resident prior to the expiration of the applicable foreign limitations period.

■ In a significant number of states with borrowing statutes, the application of a foreign statue of limitations has been held to depend on the residency of the parties at the time the cause of action accrues, not on their residency at a later time. See, *e.g.*, *Biewend v. Biewend*, 17 Cal. 2d 108, 115, 109 P.2d 701, 706 (1941); *Miller v. Stauffer Chemical Co.*, 99 Idaho 299, 300, 581 P.2d 345, 346-47 (1978); *Dugan v. Schering Corp.*, 635 N.Y.S.2d 164, 164, 658 N.E.2d 1037, 1037 (1995); *Glynn v. Stoneville Furniture Co.*, 85 N.C. App. 166, 169, 354 S.E.2d 552, 554 (1987); *Savage v. Kramer*, 95 Or. App. 166, 169, 768 P.2d 425, 426 (1989); *Tullis v. Georgia Pacific Corp.*, No. 2—98—351—CV (Tex. App. September 28, 2000). We note also that the Restatement provides that the limitations period of the jurisdiction in which the cause of action arose should apply if it has a "more significant relationship to the parties and the occurrence." Restatement (Second) of Conflict of Laws § 142 (Supp. 1988). Our holding that the application of a foreign limitations period to a foreign cause of action will not be precluded simply because any one party to the action establishes Illinois residency after the foreign cause of action accrues will insure that a greater connection exists between the parties, the controversy, and the state whose statute of limitations governs it.

The dissent accuses us of laboring to avoid an "obvious" answer to the certified question. 325 Ill. App. 3d at 692. In ordering this court to grant defendants' application for interlocutory appeal, our supreme court evidently believed that the certified question—far from being as easily answerable as the dissent believes it to be—"involves a question of law as to which there is substantial ground for difference of opinion." 155 Ill. 2d R. 308. While we have a definite answer to the certified question, we recognize (along with the supreme court, apparently) that the uncertainties raised by prior case law interpreting section 13—210 clearly preclude our calling any answer to the question—ours included—"obvious."

The dissent would have us consider the Illinois courts' construction of section 13—210 as part of the statute itself but does not specify which of the divergent court holdings concerning the statute we should

pay heed to. 325 Ill. App. 3d at 693-94. As explained at length above, the supreme court, in its most recent expositions of section 13—210, entirely ignored the continuous non-Illinois residency requirement as set forth in prior cases. See *Miller*, 98 Ill. 2d at 480-83; *Coan*, 53 Ill. 2d at 527. Some appellate court cases have followed the supreme court in ignoring the residency requirement (see *Ko*, 287 Ill. App. 3d at 42; *LeBlanc*, 178 Ill. App. 3d at 237), but at least one case has affirmed the requirement (see *Ehlco*, 309 Ill. App. 3d at 737). Given this, we fail to conceive what grounds the dissent has for stating that the continuous non-Illinois residency requirement "has been in existence since 1876 and remains good law" (325 Ill. App. 3d at 693).

The dissent agrees it is arbitrary to condition the application of section 13—210 on whether the foreign jurisdiction's limitations period had expired when a party—*any* party—established Illinois residency. Nonetheless, the dissent labors to posit policy justifications for this admittedly and, we might add, "obviously" arbitrary distinction. 325 Ill. App. 3d at 693. For instance, the dissent suggests that the continuous non-Illinois residency requirement prevents a defendant from eluding a "potential plaintiff" by fleeing from the "forum state" (presumably, the state in which the cause of action arose) to another state and then making his whereabouts known only after the "limitations period" expires. 325 Ill. App. 3d at 693. Actually, the residency requirement does indeed permit a defendant to change residency, secret himself in Illinois before the foreign limitations period expires, and then claim the benefit of the shorter Illinois limitations period. As noted above, the residency requirement permits a plaintiff the same measure of deviousness. These are all reasons why we concluded above that the residency requirement promotes forum shopping and undermines uniformity of limitations.

■ Having determined that the continuous non-Illinois residency requirement has no foundation in our cases or in sound policy and appears to have been rejected *sub silentio*, or at least held in disfavor, by our supreme court in recent cases, we hold that section 13—210 is applicable where none of the parties to a cause of action was an Illinois resident when the cause of action accrued, even if one of the parties later becomes an Illinois resident before the expiration of the limitations period of the jurisdiction in which the cause of action accrued. Accordingly, we need not address defendants' argument that the continuous non-Illinois residency requirement is unconstitutional.

## II. The Second Certified Question

■ We first address plaintiff's argument that Nebraska law indisputably applies to Newell's claims because they concern the

internal affairs of PMC, a Nebraska corporation, rather than ATC, a Delaware corporation. We cannot reconcile this claim with the shareholders' agreement, which expressly designates ATC, not PMC, as the corporate party. Indeed, plaintiff refers in its complaint to Petersen's allegedly wrongful removal of *ATC*'s directors. Accordingly, we consider plaintiff's claims as relating to the internal affairs of ATC.

In 1985, when the parties executed the shareholders' agreement, including the provision selecting Nebraska law to govern the agreement, Nebraska corporations law did not impose a limit on the duration of shareholder voting agreements. See Neb. Rev. Stat. § 21—2034 (1985). Delaware, however, limited shareholder voting agreements to a duration of 10 years. See Del. Code Ann. tit. 8, § 218(c) (1985). The time limit was removed in 1994 (see Del. Code Ann. tit. 8, § 218(c) (Supp. 1994)), and presently Delaware does not limit the duration of shareholder voting agreements (see Del. Code Ann. tit. 8, § 218(c) (Supp. 1998)). However, the former time limit applies to voting agreements entered into prior to July 1, 1994. See 69 Del. Laws 263 (1994).

■ We agree with defendants that Delaware law as it existed in 1985 governs the voting agreement in section 5 of the shareholders' agreement. We begin our analysis by looking to the conflicts law of Illinois, the forum state, to determine the substantive law that applies to plaintiff's claims concerning the shareholders' agreement. See *Esser v. McIntyre*, 169 Ill. 2d 292, 297 (1996). Illinois courts follow the analysis recommended by section 187 of the Restatement (Second) of Conflict of Laws (Restatement (Second) of Conflict of Laws § 187 (1971)) (Restatement) when deciding whether to abide by the parties' selection of the law to govern their contract. See, *e.g.*, *Maher & Associates, Inc. v. Quality Cabinets*, 267 Ill. App. 3d 69, 76 (1994). Section 187 provides that a court should give effect to the parties' choice of law unless either:

> "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188 [Restatement (Second) of Conflict of Laws § 188 (1971)], would be the state of the applicable law in the absence of the effective choice of law by the parties." Restatement (Second) of Conflict of Laws § 187 (1971).

Section (a) does not concern us here because defendants, acknowledging that ATC is engaged in the worldwide manufacture and distribution of handheld tools and was once headquartered in Nebraska, do

not dispute that Nebraska bears a substantial relationship to this controversy. Defendants' claim, rather, is that the fundamental public policy of Delaware, the state of ATC's incorporation, militates against application of Nebraska law to plaintiff's claims.

Applying, then, subsection (b) of section 187, we note that Delaware law would apply to the shareholders' agreement in the absence of the parties' choice of law provision. Section 188 of the Restatement provides that a corporation's place of incorporation is a relevant factor in determining the law applicable to a claim. Restatement (Second) of Conflict of Laws § 188 (1971). However, section 302 of the Restatement goes further, providing that issues involving the rights and liabilities of a corporation generally are determined by the law of the state of incorporation. Restatement (Second) of Conflict of Laws § 302 (1971). According to comment *a*, the section applies to the election or appointment of directors and officers. Restatement (Second) of Conflict of Laws § 302, Comment *a* (1971). As plaintiff's claims concern the voting rights of a shareholder, we conclude that Delaware's law would apply under the Restatement in the absence of the parties' choice of law provision.

Of course, Delaware law applies under section 187 only if Delaware has a materially greater interest in this controversy than does Nebraska and if honoring the parties' choice of Nebraska law would violate a fundamental public policy of Delaware. In our view, Delaware's adherence to the internal affairs doctrine (see *Rosenmiller*, 607 A.2d at 468) satisfies both factors.

The internal affairs doctrine is a conflict of laws principle that prescribes that matters relating to a corporation's internal governance should be controlled exclusively by the state of incorporation. *Edgar v. MITE Corp.*, 457 U.S. 624, 645, 73 L. Ed. 2d 269, 285, 102 S. Ct. 2629, 2642 (1982); *Rosenmiller*, 607 A.2d at 468; *Libco Corp. v. Roland*, 99 Ill. App. 3d 1140, 1144 (1981). A stockholder's participation in the election of directors, which plaintiff's claims concern, is quintessentially a matter of the internal operations of a corporation. *Rosenmiller*, 607 A.2d at 468 ("Nothing is more central to the internal management of a corporation than a stockholder's right to vote in the election of directors"); *Babcock v. Farwell*, 245 Ill. 14, 34 (1910); see also *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 89, 95 L. Ed. 2d 67, 85, 107 S. Ct. 1637, 1649 (1987) ("No principle of corporation law and practice is more firmly established than a State's authority to regulate domestic corporations, including the authority to define the voting rights of shareholders").

We are convinced that the internal affairs doctrine is a fundamental public policy. The need for the inner workings of a

corporation to be governed by a single body of laws has been frequently emphasized by state and federal courts alike. The internal affairs doctrine "serves the vital need for a single, constant and equal law to avoid the fragmentation of continuing, interdependent internal relationships." *McDermott Inc. v. Lewis*, 531 A.2d 206, 217 (Del. 1987). The Seventh Circuit explains:

> "A single rule for each corporation's internal affairs reduces uncertainty and the prospect of inconsistent obligations; it also enables the corporate venturers to adjust the many variables of the corporate life ***, confident that they can predict the legal effect of these choices." *Nagy v. Riblet Products Corp.*, 79 F.3d 572, 576 (7th Cir. 1996).

Taking a broader economic perspective, the Supreme Court has observed:

> "Large corporations that are listed on national exchanges, or even regional exchanges, will have shareholders in many States and shares that are traded frequently. The markets that facilitate this national and international participation in ownership of corporations are essential for providing capital not only for new enterprises but also for established companies that need to expand their businesses. This beneficial free market system depends at its core upon the fact that a corporation—except in the rarest situations—is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its corporation." *CTS*, 481 U.S. at 90, 95 L. Ed. 2d at 85-86, 107 S. Ct. at 1650.

The compelling policy arguments for the internal affairs doctrine convince us that Delaware, as the state of ATC's incorporation, has an overriding interest in regulating the internal affairs of ATC, including the voting of shareholders.

Plaintiff claims that the predictability argument undergirding the internal affairs doctrine has no force in this case because predictability and uniformity were insured by the ATC shareholders' selection of a single state's (Nebraska's) laws to govern their shareholders' agreement. Applying the law of Delaware will defeat, not protect, the expectations of ATC's shareholders, plaintiff submits. The Missouri Court of Appeals has employed this line of reasoning in giving effect to a choice of law clause selecting Missouri law to govern an agreement to purchase the stock of a Delaware corporation. See *Yates v. Bridge Trading Co.*, 844 S.W.2d 56, 62 (1992) ("One of the principal policy reasons for the internal affairs doctrine is to avoid the application of inconsistent or conflicting sets of laws to corporate affairs. Because the stock purchase agreement at issue applied to all Old Trading stock, the uniform application of Missouri law would not run afoul of this policy").

We disagree with the suggestion that our following the parties' choice of law would advance the same interests to the same degree as would following the internal affairs doctrine. *Yates* is poor authority for the notion. There, the court gave effect to the choice of law clause only after finding that the corporation's only tie to Delaware was the fact that it was incorporated there. See *Yates*, 844 S.W.2d at 61-62 ("The parties were free to choose the law governing their stock issuance so long as there was a uniform law applied to all shareholders, and the parties and the corporation had substantial contacts with the state whose law was selected"). Nor do the courts in the other cases cited by plaintiff follow an approach that automatically exalts a choice of law clause over the internal affairs doctrine; rather, each court takes a fact-based approach. See *Resolution Trust Corp. v. Gladstone*, 895 F. Supp. 356, 363 (D. Mass. 1995) (holding that presumption that internal affairs doctrine applies can be overcome if warranted by certain factors including concerns for certainty, for ease in the determination and application of law, and for the expectations of the parties involved); *Federal Deposit Insurance Corp. v. Raffa*, 882 F. Supp. 1236, 1246 (D. Conn. 1995) (same); *United States v. 105,800 Shares of Common Stock of First Rock Bancorp, Inc.*, 825 F. Supp. 191, 193-94 (N.D. Ill. 1993) (declining to follow internal affairs doctrine because the state of incorporation had insufficient connection with the lawsuit); *Wilson v. Louisiana-Pacific Resources, Inc.*, 138 Cal. App. 3d 216, 222-23, 187 Cal. Rptr. 852, 857-58 (1982) (applying a multifactor test for determining when California can regulate internal affairs of a foreign corporation); *Demoulas v. Demoulas Super Markets, Inc.*, 424 Mass. 501, 511, 677 N.E.2d 159, 169 (1997) (declining to follow internal affairs doctrine because state of incorporation had insufficient connection with lawsuit). We do not see how the officers, directors, and shareholders of a corporation will be comforted knowing that their choice of law clause may or may not be honored depending on how a court views various factual circumstances peculiar to the case before it. Plaintiff would have us decide whether ATC is a genuine foreign corporation or is, in fact, merely "pseudo-foreign" in that it has significant contacts with Nebraska but no contact with Delaware other than the fact of incorporation. Not only would this approach be antithetical to values of certainty and uniformity, but plaintiff has not convinced us that ATC has no contacts with Delaware other than the fact of incorporation. Indeed, plaintiff alleged in its complaint that ATC is a holding company for companies that are engaged in the "world-wide manufacture and distribution of hand-held tools." We are more inclined to infer from this allegation that ATC does have significant contacts with Delaware than that it does not.

Our refusal to apply a balancing test to this issue does not compel us to conclude that we can adequately protect the expectations of parties to corporate agreements by always giving effect to their choice of law provisions. We might defer to the parties' choice of law in the case before us and at least avoid spoiling plaintiff's alleged expectation that Nebraska law would apply to the shareholders' agreement, but we could not be confident that the next court to adjudicate the agreement would apply Nebraska law. The corporate codes of at least 26 states contain an exception for the internal affairs of a foreign corporation doing business within the state. See 4 Model Business Corporation Act Annotated § 15.05 (3d ed. 1984 & 1997 Supp.) (collecting state statutes and noting that the internal affairs doctrine is "widely accepted"). The internal affairs doctrine is a pervasive rule. See *Resolution Trust Corp. v. Chapman*, 29 F.3d 1120, 1122 (7th Cir. 1994) (noting that internal affairs doctrine is "recognized throughout the states"); L. Ribstein, *Choosing Law By Contract*, 18 J. Corp. L. 245, 267 (1993) (noting that courts have applied the law of a nonincorporating state "in only a few cases"). We would do far more to promote uniformity by adhering to the internal affairs doctrine and placing ourselves in line with the majority of states than by taking a divergent position and thereby exposing the directors, officers, and shareholders of ATC to conflicting obligations based on different bodies of law.

Independent of the foregoing is the fact, devastating to plaintiff's position, that in 1985 the internal affairs doctrine was embodied in the very statutes that the parties selected to govern the stock purchase agreement and remains so today. See Neb. Rev. Stat. § 21—20,105 (1985) (nothing in the corporate code "shall be construed to authorize this state to regulate the organization or the internal affairs of [a foreign] corporation"); Neb. Rev. Stat. § 21—20,172 (1995) (same). Plaintiff does not even mention these provisions of Nebraska law in its brief, and its responses to questions concerning them at oral argument were not persuasive.

We acknowledge that the parties to the shareholders' agreement expressly disavowed an intention to adopt the conflicts law of Nebraska. In our view, a state's conflicts rules are properly conceived of as general rules that determine the procedural question of whether that state's substantive law should be applied to a controversy brought in its courts. Cf. *Mech v. Pullman Standard*, 136 Ill. App. 3d 939, 941 (1984) (observing that Illinois choice of law rules determine "the procedural question of whether Illinois or [another state's] law governs"). The provisions of the Nebraska corporate code that exclude foreign corporations from the scope of the code do not contain general principles governing when Nebraska law applies. Rather, they are

discrete provisions within a self-contained body of substantive statutory law that quite specifically constrain the effect of that law. We conclude, therefore, that even if we chose to apply Nebraska law as it existed in 1985, we would be directed to Delaware law as it existed in 1985. See, *e.g.*, *In re Uno Broadcasting Corp.*, 167 B.R. 189, 196-98 (Bankr. D. Ariz. 1994) (noting that chosen state's statutes expressly disavowed interference with internal affairs of a foreign corporation).

Plaintiff urges us to apply Delaware law as it presently exists, that is, without the time limit on voting agreements. The only case plaintiff cites for this position concerns the issue of whether an amendment that takes effect during the pendency of a suit applies to that suit. See *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282 (1996). Section 218(c) of the Delaware corporate code, by contrast, was amended in 1994, well before plaintiff filed its complaint. Delaware law expressly provides that section 218(c), as amended in 1994, does not apply to voting agreements entered into prior to July 1, 1994. See 69 Del. Laws 263 (1994).

Plaintiff's remaining arguments concern whether the voting agreement falls within section 218(c) of the Delaware corporate code. As the certified question put to us simply was whether the internal affairs doctrine mandates the application of section 218(c) to the voting agreement, we decline to address these arguments. Since we find that the internal affairs doctrine is sufficiently justified with respect to public policy alone, we also decline to address defendants' argument that the doctrine is constitutionally mandated.

For the foregoing reasons, we hold that the limit on the duration of shareholder voting agreements provided in section 218(c) of the Delaware corporate code as it existed in 1985 applies to the 1985 shareholders' agreement.

Certified questions answered. Cause remanded.

BOWMAN, J., concurs.

PRESIDING JUSTICE HUTCHINSON, specially concurring in part and dissenting in part:

Although I agree with the majority's decision regarding the second certified question, I respectfully dissent from its answer to the first certified question.

In Illinois the statute of limitations generally applicable to claims based upon the rights and liabilities of stockholders is the residual five-year period under section 13—205 of the Code of Civil Procedure (the Code) (735 ILCS 5/13—205 (West 2000)). However, on occasion,

we must also consider the applicability of other limitations provisions. On this occasion, our supreme court has directed us to consider the applicability of the Illinois "borrowing statute" to the circumstances before us in the present case. See 735 ILCS 5/13—210 (West 1994). The borrowing statute provides:

> "When a cause of action has arisen in a state *** out of this State *** and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this State." 735 ILCS 5/13—210 (West 1994).

The borrowing statute has three conditions, two of which are apparent from the face of the statute: the cause of action must arise outside Illinois, and the cause of action must be barred by the law of the state where the cause of action arose. See 735 ILCS 5/12—210 (West 1994); *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 309 Ill. App. 3d 730, 737 (1999). In the present case, neither party disputes that the cause of action arose in Nebraska. Also, neither party disputes that the Nebraska limitations period applicable to plaintiff's cause of action has expired now. See Neb. Rev. Stat. § 25—205 (1994).

One requirement remains for consideration: as a matter of judicial construction, all parties must have been non-Illinois residents at the time the cause of action accrued and all parties must have remained non-Illinois residents until the foreign limitations period expired. *Ehlco*, 309 Ill. App. 3d at 737. The record reflects and neither party disputes that defendant Petersen established Illinois residency prior to the expiration of the Nebraska limitations period. Thus, at first blush, the conclusion seems rather obvious—the Illinois borrowing statute does not apply because defendant Petersen failed to maintain a continuous residency in Nebraska until the expiration of the limitations period.

In an effort to avoid the obvious, however, the majority concludes that both the appellate court and our supreme court have been misinterpreting *Hyman v. Bayne*, 83 Ill. 256 (1876), for the past 125 years. The majority notes that cases following *Bayne* have merely reiterated the non-Illinois residency requirement without questioning its underpinnings in legal analysis or policy. The majority has also failed to find any Illinois case that has offered a colorable policy justification for the continuous non-Illinois residency requirement.

Judicial construction, left undisturbed by the legislature, fairly can be said to reflect legislative intent in that respect. See *Miller v. Lockett*, 98 Ill. 2d 478, 483 (1983). In *Miller*, the court found persuasive two purposes of the residency requirement—to promote uniformity of periods of limitation and to discourage forum shopping. *Miller*, 98 Ill.

2d at 486. In this case, despite the majority's vigorous assertions to the contrary, I believe that Illinois possesses an interest in discouraging the use of its borrowing statute. See 27th Ill. Gen. Assem., Senate Proceedings, 1871-72, at 378, 513, 618, 837, 843, 870.

The continuous non-Illinois residency requirement promotes uniformity by treating all parties from every state in the same fashion. The residency requirement does not compel us to determine in each circumstance whether a particular forum state has a tolling statute and whether it applies to any particular defendant. The residency requirement prevents a potential defendant from taking advantage of the forum state's tolling statute. In Nebraska, absence from the state generally does not toll the limitations period. See Neb. Rev. Stat. § 25—213 (1994). The residency requirement discourages forum shopping by not allowing parties with unclean hands to flee the forum state in an effort to elude a potential plaintiff, making their whereabouts known only after the limitations period has run, thereby allowing an automatic affirmative defense based upon their own deceit. Plaintiffs are therefore required to diligently pursue their claims against their wrongful party. The result is that potential defendants must avail themselves in their forum state to potential plaintiffs for the requisite period of time. The potential defendants may relocate; however, they are then subject to the laws of this forum. In this case the applicable law has been in existence since 1876 and remains good law.

I believe the courts' interpretation throughout the years of the continuous non-Illinois residency requirement of the Illinois borrowing statute balances a nonresident plaintiff's interest in pursuing its claim with the defendant's interest in being amenable to suit for a finite period of time.

The majority notes that the continuous non-Illinois residency requirement draws an arbitrary distinction between parties who move to Illinois on a Monday rather than a Tuesday. I agree. But that is the nature of the beast with respect to statutes of limitation. Statutes of limitation are simple on their face because the time period that the legislature affixes to an action can be measured by the clock. See 735 ILCS 5/13—101 *et seq.* (West 2000). Courts are therefore left with the choice of watching the clock or inquiring into the purpose of the statute. In many cases courts follow the letter of the statute and bar a cause of action if it was not timely filed. To alleviate the hardship in some cases, parties may find relief by applying the tolling statute enacted by our legislature. See 735 ILCS 5/13—208 (West 2000).

The majority recognizes that the state of the law regarding the Illinois borrowing statute is unsettled. Unless and until the legislature

amends it contrary to our interpretation, the courts' construction of the Illinois borrowing statute is considered a part of the statute itself. See *Kroger Co. v. Department of Revenue*, 284 Ill. App. 3d 473, 480 (1996), citing *Miller*, 98 Ill. 2d at 483. I believe that, rather than our reevaluation, it is up to the legislature to modify its enactment.

In the present case, I would hold that the Illinois borrowing statute for limitations periods is inapplicable even though no party to the cause of action was an Illinois resident at the time the action accrued but because one of the parties later became an Illinois resident within the foreign limitations period.

Therefore, for the foregoing reasons, I would answer the first certified question in the affirmative.